## J. KELLETT, executor, &c. *vs.* C. RATHBUN and others.

Where the parties interested in the taking of the account, of an executor or administrator, neglect to appear before the surrogate, after having been duly cited, the executor or administrator will be entitled to proceed ex parte.

The citation of an infant should be served in the presence of his legal guardian, or of the person who has properly the actual care and custody of his person.

The citation should direct the infant to appear according to law; that is, by his guardian duly constituted.

If an infant who is cited before a surrogate has no general guardian, or if the general guardian has an interest adverse to the rights of the infant, a guardian ad litem must be appointed by the surrogate.

The petition of appeal, upon an appeal from a surrogate's decree, should name all the persons intended to be designated as the respondents, and should pray that they may answer the same.

Where one of several legatees cites an executor to account before a surrogate, and upon the return of the citation the executor, instead of making the objection that he is not liable to account, obtains a citation for all the other legatees to be present at the taking of the account, he admits his liability; and he cannot afterwards set up, as a bar to the suit for an account, a previous settlement with the legatees.

Where an executor or administrator renders an account to the surrogate, upon the application of either a creditor or legatee, or with a view to a final settlement of the account, he must swear to the correctness of the account, both as to the debits and credits; and all charges for payments, or disbursements, of sums exceeding $20, must, if disputed, be established by the production of vouchers or other proper evidence.

Where an executor mixed the funds of the estate with his own, and loaned out the same from time to time, on interest, without keeping separate accounts thereof; it was *held* to be a violation of his duty, by which he became liable to pay interest on the monies belonging to the estate.

An executor cannot appeal from the decision of a surrogate in refusing to allow a claim of a creditor against the estate, which claim the executor has not paid or become personally liable to pay.

Upon the affirmance of a decree of a surrogate, directing the payment of a balance found due from the appellant, the respondent may have the decree of affirmance enrolled, and may take out execution thereon in the appellate court.

April 2. THIS was an appeal from the sentence of the surrogate of the county of Cayuga, upon the final settlement of the accounts of the acting executor of Amos Rathbun, deceased. The testator, by his will, directed his real estate to be sold

within five years after his decease ; and that the proceeds both of his real and personal estate, after the payment of a small legacy to one of his sons, and an allowance to the widow in lieu of dower, should be divided among his other nine children in certain specified proportions. J. Kellett, the appellant, who was one of the executors, and the widow, who was appointed executrix, made probate of the will, soon after the death of the testator in 1823. The real estate was sold by the executor and executrix, in 1824, and the proceeds thereof, as well as the proceeds of the personal estate, were received by Kellett previous to September, 1828. On the 15th of September, 1828, Kellett made a statement of the gross amount of funds in his hands, as he alleged, and of the amount thereof due to each of the distributees, and paid over the several sums which from such statement appeared to be due to them respectively. The balance thus stated to be due to C. Rathbun, one of the distributees residing in the state of Ohio, was received by B. Kniffen, who had a power of attorney from him. Kniffen, as the attorney for C. Rathbun, together with four of the adult distributees, gave a receipt to Kellett for the balances thus paid over to them respectively, as their portions due on the final distribution of the estate. None of them, however, went into the examination of the accounts of the executor, and no detailed account of the receipts and expenditures on account of the estate was either made out or exhibited. And it was stated by the counsel of Kellett, at the time of giving the receipt and in his presence, that the giving of the same would not deprive the signers thereof of their rights if the accounts of the executor were incorrect. Kniffen was also expressly told by Kellett and his counsel that his signing the receipt would not prevent C. Rathbun from making a further claim upon the executor if the account was not correct. He therefore received such balance as Kellett stated to be due, without looking into his accounts.

In June, 1830, C. Rathbun obtained from the surrogate of Cayuga a citation, calling upon Kellett, the executor, to render an account of his administration. On the return day of this citation, Kellett appeared before the surrogate, and, in behalf of himself and the executrix, presented a petition, stat-

ing that he had been cited to account by C. Rathbun ; that the petitioners knew of no claim against the estate, except a demand made by I. Merritt, on account of a deficiency of land ; that the petitioners were desirous of having a final settlement of the accounts ; and praying that the several distributees mentioned in the petition, and Merritt who made such claim as a creditor, might be cited to attend the final settlement of the accounts. A citation was issued accordingly, returnable on the 19th of July, 1830 ; and the proceedings on the original citation of C. Rathbun were adjourned until that time. The citation issued on behalf of the executor and executrix, was returned duly served on the several persons named therein. The executor then exhibited to the surrogate the statement of the balances due to the several distributees, as made by him on the 15th of September, 1828, with the receipt thereon, and insisted that he was not bound to render any further or other account of the administration of the estate. After hearing testimony as to what took place at the time that statement was made and the receipts were given, the surrogate decided that this was not a sufficient account. He therefore ordered the executor to render an account of his proceedings as executor, according to law, on the 28th day of the same month ; to which time the proceedings upon the several citations were adjourned. The executor then rendered a detailed acount of his administration of the estate ; but such account was not verified by his oath, except as to payments made by him of sums of twenty dollars and under. The counsel for the distributees objected to several items on the credit side of the account ; and also claimed interest on the monies in the hands of the executor, from time to time, for which he had given no credit in the account. After hearing the proofs and allegations of the parties, the surrogate allowed to the executor some of the credits objected to, and disallowed others, which are particularly referred to in the opinion of the chancellor. The surrogate also decided, that upon the facts disclosed by the proofs, the executor ought to be charged with interest on the monies in his hands arising from the sales of the real estate, to be computed after the expiration of two months from the time he received such monies,

and upon the proceeds of the personal estate after six months, from the time when such proceeds were received. The balance found due from the executor, on the statement of the account by the surrogate, including such interest, amounted to the sum of $2225,80 on the 19th of August, 1830, in addition to what had been paid to the distributees in September, 1828, and previous thereto. This sum the executor was directed to bring into court, together with a further sum which he was sentenced to pay for the costs of C. Rathbun and the surrogate's fees upon the taking of the account. From this final sentence or decree of the surrogate, the executor appealed to the chancellor. The petition of appeal filed in this court, according to the 118th rule, prayed that the respondents might answer the appeal, and that the sentence or decree of the surrogate might be reversed ; but without stating the names of such respondents, or showing who were intended to be made parties to the appeal. It did not appear that any answer had ever been put in to this petition of appeal, or that an order to answer the same had ever been obtained. But the notice of hearing, and other papers in this court, were entitled in the cause of I. Kellett, appellant, against C. Rathbun and others, respondents.

*W. H. Seward*, for the appellant.

*G. C. Bronson*, for the respondents.

THE CHANCELLOR. The proceedings in this case are informal, not only in the court below, but also upon this appeal. But the counsel for the appellant, and the counsel for the several distributees who were entitled to be made parties to the appeal, have consented that such formal defects may be corrected, and that the case should be disposed of on its merits. It is only necessary, therefore, to refer to some of these formal defects for the purpose of pointing out the corrections to be made in the proceedings in that respect, and to prevent similar occurrences in future cases. It appears by the return of the surrogate that all the residuary legatees or distributees of A.

Rathbun, deceased, were cited, by the executor and the executrix, to attend before the surrogate upon the final settlement of their accounts. But it does not appear from the proceedings which are before this court, whether any of such legatees, except C. Rathbun, attended before the surrogate, either by their proctors or otherwise, upon the taking of the account. Neither does it appear whether any person attended as the general guardian, or as the guardian ad litem, of those legatees who were infants. The revised statutes do not direct the particular mode of proceeding where the parties interested in the taking of the account of an executor or administrator neglect to appear, after being duly cited to attend upon the final settlement of the account; and no special provision is made for the protection of the rights of infants in such cases. I apprehend, however, that the only effect of the default of a legatee to attend, in such a case, would be to enable the executor or administrator to proceed ex parte as to such legatee. (*See* 1 *Bro. Civ. & Adm. Law*, 457.) Minors are not esteemed in law as capable of conducting or defending a suit for themselves; and they therefore cannot be deprived of any of their rights by a mere neglect to appear upon a citation, or other process to compel an appearance. The citation of a minor should be served in the presence of his legal guardian, or in the presence of some person upon whom the actual care or custody of the minor, for the time being, has properly devolved. And evidence of the service of the citation on the minor merely is not sufficient; especially, if the minor is so young as to be incapable of understanding the object or intent of such service. (*Cooper* v. *Green*, 2 *Addams' Eccl. Rep.* 454. *Law's Pr. Eccl. Courts*, 69.) The citation in such cases should direct the minor to appear according to law; that is, by his guardian lawfully constituted. (*Law's Pr.* 88. 1 *Bro. Civ. & Adm. Law*, 454.) And if a minor, who is cited before the surrogate in a testamentary cause, has no general guardian, or if the general guardian has an interest adverse to the rights of the minor, so that he cannot act as guardian in relation to that matter, a guardian ad litem may be appointed by the surrogate to protect the rights of the minor. (*Turner* v. *Felton*, 2 *Phillim. Rep.* 93.) The counsel who has appear-

ed for the respondents on this appeal may therefore be assigned as the guardian ad litem for those legatees who are minors, and may put in an answer to the petition of appeal.

The petition of appeal is informal, in not naming the persons who are intended to be designated as the respondents. The proceedings before the surrogate were instituted on the petition of C. Rathbun. He therefore was strictly the actor in the litigation in the court below ; but the other legatees were called in by the appellant, because they were also interested in the taking of the account. The sentence of the surrogate is for a gross sum which is to be distributed among all the residuary legatees ; they have therefore a common interest, and must all be made parties to the appeal. It was irregular to bring the cause to a hearing before the respondents had answered the petition of appeal. After the transcript of the proceedings before the surrogate has been returned to this court, if the respondents named in the petition of appeal do not voluntarily answer the same, the appellant should apply for an order requiring them to put in their answer to the petition of appeal, within such time as the court may think proper to direct, or that they be precluded, and the cause be heard ex parte as against them.(a) The petition of appeal in this case must be amended, so as to pray that the several persons in whose favor the sentence of the surrogate was pronounced may answer the petition. And the respondents must file an answer to the same, nunc pro tunc, as of a day previous to the argument of the cause.

The first objection which is made to the sentence of the surrogate is, that the appellant had settled with the legatees, in September, 1828, and therefore was not bound to account. The appeal does not appear to reach that case, even if it was competent for the executor to appeal from the order directing him to account, after the expiration of thirty days from the making of that order. The appeal is in terms from the final decree in the cause ; and no objection is raised in the notice or in the petition of appeal, to the order of the surrogate di-

(a) This is now an order of course. See 118th rule, as amended March 4th, 1834.

recting the executor to account. There is also another diffi-
culty in sustaining this objection to the decree of the sur-
rogate. If the executor had settled with C. Rathbun, so
that he had no right to call him to account before the surro-
gate, he should have put in an allegation of the fact before
the surrogate, upon the return of the first citation, as a bar to
C. Rathbun's suit for an account. Instead of doing this, he
admits his liability to account by demanding and obtaining a
citation for all the other legatees to be present at the taking
of such account. After that, it was too late for him to in-
sist that he had already fully accounted for the administra-
tion of the estate. But the evidence in the cause shows con-
clusively that there was no settlement of the account between
the executor and the agent of C. Rathbun. The agent was
expressly informed that the receipt signed by him would not
bind his principal, except for the amount actually received.
He therefore took whatever sum the executor chose to pay,
and without looking at the accounts. The other legatees,
who signed the receipt for themselves, were also informed
that they were not to be precluded, if it was afterwards as-
certained that there was any mistake in the accounts. They
might perhaps have had more difficulty in sustaining a pro-
ceeding, as actors before the surrogate, to compel the ex-
ecutor to account, without first showing a mistake in the
balance of the account as stated by the executor. But
when those legatees were cited before the surrogate for the
purpose of binding them by the account which was to be tak-
en between him and C. Rathbun, they were entitled to any
further sums which might be found due to them upon the re-
stating of the accounts and the correction of errors which had
before occurred. If the surrogate had any jurisdiction or
authority to entertain a proceeding for the final settlement of
the accounts of the executor and executrix, then the ac-
count, rendered on the 19th of July, was wholly insuffi-
cient. Even the account subsequently rendered was not
such an one as the executor was bound to render, as it
was not made on oath. When an executor or administra-
tor renders an account to the surrogate, either upon the ap-
plication of a creditor or legatee, or with a view to a final

settlement thereof under the provisions of the statute, he must swear to the correctness of the account, both as to the debits and credits. (*Conset's Pr. Eccl. Court,* 290, *pt.* 6, *ch.* 3, § 2.) And if any items on the credit side of the account, except for payments not exceeding $20, are disputed, he must also establish the payment, by the production of vouchers, or other proper evidence of such payment. In this case, for some reason which is not stated, the executor has only sworn to the correctness of the account as to the payments of $20 and under ; leaving it to be inferred that he was not able to swear to the correctness of the account generally.

The first disputed item on the credit side of the account, which was rejected by the surrogate, was $152,30, claimed in behalf of I. Merritt for an alleged deficiency in the sale of a part of the real estate. There is no pretence that this sum has ever been paid by the executor ; and, from the testimony in the case, I am satisfied that he was not legally holden for the payment thereof at the time these proceedings were instituted before the surrogate. This is evident from the fact that he had not thought it his duty to pay that sum, although he had sufficient funds in his hands at all times for that purpose, and the extent of the alleged deficiency had been known more than five years. Again, Merritt himself was cited as a creditor, for the purpose of determining whether he was entitled to this claim upon the estate. But instead of attempting to establish the claim in his own favor, by the proper testimony, he is called as a witness to obtain an allowance thereof in favor of the executor. As the executor had not paid the claim, he was not entitled to a credit therefor. If Merritt has proved that he has an equitable claim upon the funds of the estate, and the surrogate has not allowed such claim, he is the proper person to appeal from the decision of the surrogate thereon.

There was no evidence which could have justified the surrogate in crediting the executor with the $600 alleged to have been advanced to the executrix. The receipt produced was not given by Mrs. Rathbun in her character of executrix, neither was it given to him as executor. The legal presumption therefore is, that it was some private transaction between Kellett

and Mrs. Rathbun. Probably it was a part of the amount due to her on account of her dower in the land, and with which he had previously credited himself in gross. If he had rendered his account under oath, as the surrogate should have required him to do in a case where infants were concerned, although the adult legatees did not require it, I presume he would not have credited himself with this $600 as a sum justly chargeable against the estate.

The evidence shows that the executor mixed the funds of the estate with his own, and loaned them out from time to time, on interest, without keeping any separate account thereof. This was a violation of his duty as executor, and renders him liable to pay interest on the funds. (*Ram on Assets*, 512, § 5.) The only doubt upon this part of the case is, whether the interest should not have been compounded, or computed by annual rents, so as to give the estate the benefit of the annual interest which the executor probably received. I also think there was sufficient in this case to justify the surrogate in decreeing costs against the executor, who had retained this large balance from those who were justly entitled to the same, and subjected them to the expense of this litigation.

The sentence and decree of the surrogate must therefore be affirmed, with costs. And the appellant must pay the register of this court the balance of $2225,80, together with the interest thereon, from the 19th of August, 1830; to be distributed among the residuary legatees, rateably. He must also pay into court the amount allowed by the surrogate for costs and surrogate's fees, and must pay to the respondents their costs on this appeal, to be taxed. And the respondents are to be at liberty to enrol the decree of affirmance here, and to have execution thereon out of this court, according to the course and practice of the court of chancery in other cases.