NEW YORK COUNTY—HON. CHARLES McVEAN, SURROGATE—September, 1846.

## In re JONES.*

### In the Matter of the accounting of JONES et al., executors of JOHN MASON, deceased.

The account of proceedings required of an executor or administrator must be such an account as, when rendered, may be finally settled.

The account must state, as part of the executor's proceedings, when the inventory was filed, when the advertisements for claims were published, what claims were allowed, what disputed and what rejected by the executor, and the time and manner in which they were rejected or dis-

---

* Reported in 5 *N. Y. Leg. Obs.*, 124.

puted; what suits, if any, have been commenced on such disputed or rejected claims; which of them have been determined, and how; and which are pending, and the amount claimed; also what claims have been presented and allowed since the expiration of the advertisement for claims. If no such claims have been rejected or disputed, and no suits commenced, it must be so stated. All these things are essential in the account. It is material also that the character of the debts paid or allowed or prosecuted, should be stated—that is, whether judgments docketed, &c., or debts of inferior class.

The executor must first charge himself with the amount of the inventory; then with "the increase" of the inventory for any cause, whether direct or indirect, whether it be the increase of the flock, from interest, from selling at a higher price than the appraised value, or it be the increase from any property not embraced in the inventory. If there is no increase, that fact must be stated. He may credit himself for articles lost or perished, stating the cause of the loss; with the decrease, and with debts due the estate not collected, stating the facts justifying the credit given; with the funeral charges and expenses of administration; with moneys paid to creditors, naming them; and then, with payments to legatees and next of kin. He must state the ages, condition in life of females, of legatees, and next of kin, and if any are minors, the fact must be stated, and whether they have guardians, and if so, their names, residences, and how appointed. He must also produce vouchers supporting each payment, or in case of claims under $20, in lieu of vouchers, his own oath of payment.

The surrogate has not the jurisdiction to try or to establish a disputed debt. He can only determine the fact whether the debt be established or not.

The surrogate granted an order requiring the executor to tender an account of his proceedings. The sufficiency of the account as rendered was contested by the petitioner

A. L. ROBERTSON *and* MR. RING, *for the Applicant.*

M. S. BIDWELL *and* DANIEL LORD, *for the Executors.*

THE SURROGATE.—What does the order require? The statute renders the answer to this question plain. The order itself speaks for itself. Its mandate is that the executor do render an account of his proceedings as executor. Its comprehensiveness has its foundations in its simplicity. It reaches every part of his administration by the force of the terms used. An analysis of the statutes shows the design of the order to be as far reaching as its language imports. The

52d section (2 *Rev. Stat.*, 1 ed., 92), confers jurisdiction upon the surrogate to require an account of proceedings of an executor by order, after the expiration of eighteen months from the time of his appointment. By the 59th section the executor may have " the same" account that he is required to render by the said 52d section, finally settled. It therefore follows that the account that is to be rendered in obedience to the order is, when rendered, such an account that it may be finally settled, for it is " the same" that may, in the option of the executor, be finally settled. If it be borne in mind, in considering the provisions of this statute, that the only account required by that statute is the one in its essence and form when rendered, such that it may be settled at the call of the applicant, or finally settled at the call of the executor, all difficulty will be avoided. There is but one account mentioned in the statute, and the provisions of the statute as to the examination of the executor apply to that account, no matter whether the examination take place when presented, or when settled, or when finally settled.

The *rendering* of this account is not completed on filing the account, but includes within it the entire process of settlement or final settlement, when required. The account must state, as part of the executor's proceedings, when the inventory was filed; when the advertisements for claims were published; what claims were allowed, what claims were disputed, and what claims were rejected by the executor, and the time and manner in which they were rejected or disputed; what suits, if any, have been commenced on such disputed or rejected claims, which of them have been determined, how determined, and which of them are pending, and the amount claimed. Also, what claims have been presented and allowed since the expiration of the publication of the advertisements for claims. If no such claims have been rejected or disputed, and no suits have been commenced, it must be so stated. All these things are essential in the account. The inventory is the basis of the accounting. How can the surrogate make the allowances for property

lost and for decrease, as he is authorized to do by sections 56 and 57 of said article, except on reference to the inventory which the executor is required to file? And how can he determine whether debts paid to creditors were properly paid, as the surrogate is required by section 65, if he is not informed by the account of all the debts? If all be not paid, it may be improper to pay the whole of one debt. The payment of each depends upon the payment of all, or his having in his hands the means to pay all. How can the surrogate reserve from distribution a sum to satisfy pending suits, as he is required by section 74, if it be not stated in the account what suits are pending?

Not only are all these things material, but it is material also that the character of the debts paid, or allowed, or prosecuted, should be stated—that is, whether they are judgments docketed, &c., or debts of inferior class. How else can the surrogate determine whether they have been properly paid; or how can he, if unpaid, determine whether they are preferred debts under the statute? The executor must first charge himself with the amount of the inventory. Then he shall charge himself with "the increase" to the inventory for any cause, whether direct or indirect, whether it be the "increase" of the flock, "the increase" from interest, "the increase" from selling at a higher price than the appraised value in the inventory, "the increase" from any property not embraced in the inventory. And if there be no increase from any cause, that fact must be stated. The authority for requiring this is section 57, which says an executor shall make no profit, but expressly provides that he shall account for the increase. The section 65 also shows that these matters must be embraced in the accounts. The sum total of these are the assets with which the executor is chargeable; and his next business is to show what has become of this sum total. The first credit is for articles perished or lost. The cause of loss must be stated, for the surrogate is to pass on the sufficiency of the excuse offered, judicially— that is, whether "lost or perished without the fault of the

executor." (Section 56.) He must credit himself with the decrease, and with the debts due the estate not collected. The fact whether they were collectible or not, being a fact to be judicially determined by the surrogate (section 65, subd. 3), the facts justifying the credit must be stated. The fact stated that they are not collected, will not justify the decree that they were not collectible. That they were not, must be shown by a proper statement. He must next then credit himself with the funeral charges and expenses of the administration. (Sections 54, 65.) He must then credit himself with moneys paid to creditors, naming them, and then with payments to legatees and next of kin. He must state the ages, condition in life of females, of legatees, and next of kin: and if any are minors, the fact must be stated, and whether they have guardians; and if so, their names and places of residence, and how appointed. The surrogate is to pass upon the propriety of the payments, if made to the legatees and next of kin; or if not paid, he is to distribute the surplus to them; and in either case these facts are indispensable. (Sections 65, 72.) If there is any other fact which has occurred as part of his proceedings, which may affect the estate, or the rights of any distributee, or his own rights, he is bound to state it. He must not only state in what character his payments were made, as which to creditors, legatees, or next of kin, or for expenses for funeral charges, or of administration, distinctly, but he must produce vouchers supporting each payment; or in cases of claims under $20, where no voucher is produced, he must make and present, in lieu of vouchers, his own oath positively to the fact of payment, when made and to whom. When the executor shall have done all this, he will in the first instance have obeyed the order to render an account of his proceedings in the manner plainly written in the statute; and nothing short of this will answer. It is not his business to be wiser than what is written, and stop short of what he is commanded to do, or to go behind the order, because, according to his own speculations upon the subject, the command is more comprehensive than

the exigencies of the case requires. Judgment does not belong to him. He is to obey, and not speculate. The mandate is judicial and peremptory, as to him, to render an account of his proceedings, not to the extent he shall deem proper, nor a part of his proceedings, but his proceedings as executor from the day he qualified until the day he answers the order. The applicant merely moves for the benefit of all interested, and all interested in each part and in the whole.

This account, when rendered in this manner, shows not only what is due to every other creditor, legatee, and next of kin ; it is, in fact, such a one as if required, may be finally settled. So that the surrogate, on inspection, could write on the bottom of it a decree of final settlement and of distribution without asking a question. This account when rendered, if not disputed by the applicant, is self-adjusted, settled as far as regards him. It discloses, of course, what is due to him, and he asks the surrogate to decree the payment thereof. This is done orally ; it would be unpardonable in the surrogate to require more of him. He may object to six cents as a credit, and the surrogate determines his objection. This is a settlement by the surrogate, whether he allows the objection or not. The determination is the settlement; and being settled, it judicially appears what is due the applicant, and on being asked, the surrogate is bound to decree payment. Any statement in the account may be disputed, and the determination thereof by the surrogate is a settlement, and of necessity, when so settled, the account shows what is due to the applicant as well as to every one else. It is only making it true in the points in which it lacked in truth when presented. This statement, when made by the surrogate, is of no judicial force as between the executor and other parties. The accounts, as rendered, would however, as between him and all other parties, have the force of an admission, if they chose to avail themselves of it, from the fact that no one can compel the executor to have a final settlement. Each creditor, legatee, and next of kin has a right, as to himself, to have the

accounts, as between him and the executor, settled by the surrogate, and his share decreed to be paid to him.

The executor may, however, apply to have the accounts thus required to be rendered by the order, finally settled. He accordingly takes a citation, and brings in all the parties interested to attend the settlement. The process is the same as above stated. If, on inspection, the parties are satisfied, the surrogate by decree settles the account finally, and decrees payment to all; and if disputed, he makes it true, and distributes to each and all. It is as indispensable, when the settlement is as to one, that the share of all should appear, as it is when the final settlement is made, all being parties. This is necessarily so, and is manifestly the design of the statute. All the provisions of the statute contemplate but one proceeding under the statute, but different stages of the same proceedings on "the same" account required by section 52. The executor is to produce his vouchers on the accounting, whether self-justified, settled, or finally settled. He is to be examined on oath touching the payments and property and effects, not in any one stage of the proceeding, but on the accounting on the settlement or the final settlement, as the case presents itself. The allowances to be made by the surrogate for losses is to be made, whether settled or finally settled.

[The surrogate here goes on to discuss the doctrine that no petition or citation is a necessary preliminary to the granting of an order requiring an executor to render an account of his proceedings. This doctrine of the surrogate is not now the practice of the Surrogates' Courts, and the contrary is established by the cases of *Gratacap* v. *Phyfe* (1 *Barb. Ch.*, 485), and *Westervelt* v. *Gregg* (*Id.*, 469). This part of the surrogate's opinion is therefore omitted.]

The surrogate has not the jurisdiction to try or to establish a disputed debt, under any circumstances. Such jurisdiction is exclusively in the common-law courts. He can determine the fact, whether the debt be established or not. It is part of the accounting, whether this and all other debts have been

established by judgment, by admission directly made, or by failure to dispute or reject them, and is one of the most important questions to be settled.