New York County.—HON. D. C. CALVIN, Surrogate.— January, 1881.

## Underhill *v.* Newburger.

*In the matter of the estate of* Joseph J. Hecht, *deceased.*

An administrator's claim against the estate, if objected to, must be proved to and allowed by the Surrogate under section 43, 3 *R. S.*, 96 (6 ed.). The affidavit of the administrator, verifying his claim, does not amount to " proof " of the same. The existence of the debt must be established by legal evidence.

Where a duly-verified claim is presented to the representative of an estate, he must either admit or reject the claim within a reasonable time. In the absence of any act on his part indicating his rejection or dispute of the claim, it will be presumed to have been admitted.

An administrator with the will annexed has no authority to pay the expenses of lunacy proceedings instituted against the widow and sole legatee of decedent.

An administrator cannot be allowed a charge for preparing his accounts,

without proof that it was necessary for him to employ an account-ant.

Where assets of the estate are sold below the inventoried price, the burden of explaining the discrepancy, and that the decrease is without his fault, rests upon the representative of the estate. His verified account, setting forth the amount received in the sale, is not, if objected to, *prima facie* evidence in his favor.

Cooper *v.* Felter, 6 *Lans.*, 485, doubted.

Tucker *v.* Tucker, 4 *Keyes*, 136, distinguished.

MOTION to confirm the three reports of the referee, to whom the accounts of the administrator (with the will annexed) of decedent, were referred to examine.

By his first report, the referee disallowed the personal claim of the administrator for legal services claimed to have been rendered by him to the decedent in his life-time, amounting to the sum of $930.13, "for want," he states, "of sufficient and proper proof in support of the same."

The referee allowed the claim of S. A. Underhill against decedent for $185.79, and states that the claim "was duly served upon the administrator herein, on or about May 8, 1877, and the same was never objected to by him, nor did he ever offer to refer the same." He disallowed items in schedule C, as follows :

| | | |
|---|---|---|
| July 25, 1876. | Peter Cooper Fire Ins. Co. | $6.00 |
| Sept. 5, | John Bardes & Co. Coach. | 5.00 |
| Feb. 25, 1876. | Commission and jury fees. | |
| | Lunacy. | 92.50 |
| Oct. 3, | Isaac Wyman, Counsel. | 250.00 |
| " | Dr. David Brikes. | 50.00 |
| Oct. 14, | Dr. T. H. Smith. | 25.00 |

July 19, 1879. L. Newburger, services pre-
paring accounts.   .   . 25.00

Amounting together to .   .   .   . $453.50

Charging the administrator with the
amount of the inventory.   .   . $3,602.84
And crediting him with the rest of
schedule C.   .   .   .   . 1,278.00

Leaving a balance in his hands of    $2,324.84

To which report, as it disallowed and allowed said claims against the estate, and the several items in schedule C of the account, as therein and above stated, the administrator excepted.

In the inventory filed herein April 11, 1877 a "lot of jewelry now in the Safe Deposit Company," then belonging to the estate, was appraised at $1,500. In his account, filed November 29, 1879, the administrator states that he sold this jewelry for $600. By a second order of reference the matter was sent back to the referee to examine "in respect to the $900 loss in inventory." The referee reported that, "in the absence of any evidence before me as to when the jewelry was sold, and to whom, and whether at private sale or public auction, or what efforts, if any, were made to get a fair price for it, or whether it was the best price that could have been obtained, I am constrained to hold that the administrator should be disallowed the item of decrease, . . . and that he be charged with the inventory valuation of this jewelry, to wit, $1,500."

The minutes taken and returned with the report in

this proceeding, exhibited the course pursued by the respective parties therein, on the reference, and showed that no oral testimony in respect to this decrease was taken. The entries were as follows :

" Mr. Newburger asks to have it placed on the minutes that he is here, in readiness to be examined.

" Mr. Yates, as proctor for Mr. Hecht's administrator, thereupon calls upon Mr. Newburger to give an explanation of the apparent loss upon a lot of jewelry belonging to decedent.

" Mr. Newburger answers that he is ready to be examined for that purpose."

Whereupon the contestants introduced, in evidence, a copy receipt, given to the administrator by the Safe Deposit Company, for the jewelry, dated November 14, 1877, wherein the value of the jewelry is stated to be $3,000, the administrator objecting that the evidence is " immaterial and improper."

This report was also excepted to.

WILSON M. POWELL, *for the New York Hospital.*

JOHN BRUNNEMER, *for creditors.*

THEODORE B. YATES, *for the administrators of Caroline Hecht.*

GEORGE F. LANGBEIN, *special guardian of said Caroline Hecht, a lunatic.*

JOSEPH E. NEWBURGER, *the administrator.*

THE SURROGATE.—The exception of the administrator to the disallowance of his personal claim against the estate should be overruled, for the reason that no proof was given to justify its allowance.

By section 43, 3 *R. S.*, 96 (6 ed.), it is provided that none of the decedent's property shall be retained by an executor or administrator to satisfy his debt or claim, until it shall have been proved to, and allowed by, the Surrogate.

It is quite evident that when the statute requires the claim to be proved, it contemplates the same proof which is required to prove any other claim against the estate, when objected to ; and that the affidavit of the executor, verifying his claim, does not amount to such proof, nor is such an affidavit ever denominated "proof."

In Williams *v.* Purdy (6 *Paige*, 166), the Chancellor held, that the executor or administrator must make the usual oath to his claim, and also produce legal evidence of the existence of the debt.

The next finding excepted to was as to the claim of one Underhill for $185.79, duly presented to the administrator ; the same was never objected to by him, nor did he offer to refer it. By section 46, 3 *R. S.* (6 ed.), 96, it is provided that an executor or administrator may require satisfactory vouchers, and an affidavit that the claim is justly due, &c. ; and by section 47, the executor or administrator, if he doubt the justness of the claim presented, may agree, in writing, to refer the same. By section 49, it is provided that if a claim be disputed or rejected, and not referred, the claimant shall commence a suit within six months, &c.

These sections seem to imply some act on the part of the representative of the estate, by which he shall indicate his rejection or dispute of the claim, but in Cooper *v.* Felter (6 *Lans.*, 485), Mr Justice LEONARD, at p. 487, states that the Court of Appeals in Tucker *v.* Tucker, held

that when a demand was presented to an executor or administrator and not rejected or admitted, and no offer made to refer, it must be regarded as a disputed demand, that the executor or administrator could not be permitted to occupy an equivocal position, but an examination of that case (4 *Keyes*, 136), shows that when the claim was presented, the administratrix was asked what she had to say to it, and answered that she had nothing to say to it, which occurred on February 6, 1857; but it also appeared that in the same month, that when she served notice upon the claimant of her final accounting, she stated to the claimant that they did not consider it a legal debt, and they had no right to pay it.

Upon these facts, Mr. Justice MILLER, in his opinion, held that the claim at the time of the final account was disputed, within the meaning of the statute; that when it was presented it was not admitted; that at one time the administratrix said she had no right to pay it, and at another the administratrix said, there was fraud in the claim and he was opposed to paying it. And upon the accounting, the demand was presented and its allowance opposed. The learned judge, at p. 148, says, "that representatives, in the discharge of their duties, are not at leave to occupy the equivocal position of neither allowing or rejecting an account presented;" and it seems to me that to hold, as did Mr. Justice LEONARD in Cooper v. Felter, as to the tenor of this decision, would be to adjudge that such representatives of an estate could occupy such an equivocal position. I fail to see anything in the latter case to justify the conclusion, that if the claim is not admitted it should be considered re-

jected, unless the term "admitted" is used in contra-distinction to "rejected."

For in that case, before the Court of Appeals, there was abundant evidence that the account was disputed within a few days of its presentation, while in the case in *Lansing* there is nothing stated to indicate what was done when the claim was presented.

I am, therefore, of the opinion that when a representative of an estate has a claim duly verified presented to him, it is incumbent upon him either to admit or reject the claim ; or, in case he shall not be possessed of the facts justifying the determination of the question, he should take the matter under consideration, and when he reaches a conclusion, advise the claimant thereof. Otherwise, the latter would seem to be in doubt whether he should offer to refer, or commence an action to enforce it.

The exception should be overruled.

The first item in schedule C, rejected, of $6, seems to have been disallowed for the reason that it was covered by another item allowed.

As to the next succeeding five items, amounting to over $400, they appear to be charges for disbursements, in the matter of the lunacy proceedings relating to the decedent's widow, subsequent to his death ; as to which I am entirely unable to perceive any legal authority to insert them as a disbursement of this estate. When the intestate died, his obligation to even support his wife ceased, and whatever interest she had in his estate became hers at that time. If her estate is liable for the expenses of the proceedings in lunacy, they will be chargeable to it on the accounting by her representa-

tive.   The administrator with the will annexed had no more right to charge those expenses to this estate, than he would a disbursement for the support of an entire stranger to it, especially as against the creditors contesting.   And the same may be said respecting the representative of the estate, if any claim against him as such should be presented to him for his approval or rejection, and its payment might be subject to contest on his accounting.

As to the last item rejected in that schedule, the referee does not state the ground of its rejection.   But it is presumed that it was upon the ground that the preparation of the administrator's account was a part of his duty, for which he was presumed to be compensated by his commissions, and that to entitle him to make such a charge, he should have shown before the referee, that the account was such as to justify the employment of an account was to prepare the same, and that the burden of such proof was upon the accounting party.

The absence of this proof, in my opinion, justified the rejection of the charge.

The exceptions to the disallowance of the items abovementioned, should, therefore, be overruled.

The only question remaining to be considered, is the disallowance by the referee of the alleged loss of $900, on the sale of the jewelry, in his second report; it appearing that certain jewelry was inventoried at $1,500, and the administrator charges himself $600 on the sale thereof, without giving any explanation or proof of the circumstances of the sale.   He attended before the referee, and announced his readiness to be examined upon that subject by the contestants, but declined to

give any explanation in his own behalf; and the question is squarely raised, whether, under objection, the verified account, setting forth the amount received on sale, is *prima facie* evidence, needing no explanation of the discrepancy between the inventory and the price realized at the sale. By section 69, 3 *R. S.*, 100 (6 ed.), it is provided that the Surrogate may allow an executor or administrator for property perished or lost without his fault, and section 70 provides that he shall sustain no loss by decrease without his fault of any part of the estate, but shall be allowed therefor, on settlement of his account.

It would seem that the condition of such allowance "without fault," imposed the duty on the accounting party of showing affirmatively the existence of the condition. (See Matter of Jones, 1 *Redf.*, 263.)

I am of the opinion that it would be a very unsafe rule to establish that the representative of an estate may overcome the force of an inventory, by a mere statement that he has sold the property at a greatly reduced price, and thus throw the burden of proving neglect or bad faith upon the contestants, who cannot be presumed to know the manner of sale, or the circumstances under which it was made, though I am not able to find any direct authority upon the subject.

It seems to me it is plainly intimated, by section 14, 3 *R. S.*, 733 (6 ed.), which provides that in any action against executors, &c., in which the fact of administering the estate shall come in issue, and the inventory made by them shall be given in evidence, that the plaintiff or defendant may rebut the same by proof: 1st, that any property or effects have been omitted in

such inventory, or were not returned therein at their true value. 2d, that the property has perished or been lost, without their fault, or fairly sold by them at private or public sale, at a less price, or that since the inventory it has deteriorated or enhanced in value.

Though the terms of this section are somewhat obscure, I understand the meaning to be, that where the executors or administrators give the inventory in evidence, to fix their liability, the plaintiff may show the omission of property therefrom, or an under valuation, or an enhanced value. While, if the plaintiff shall give it in evidence, to fix their liability, they shall be at liberty, in order to overcome it, to show that the property has perished or been lost without their fault; that it has been fairly sold at private or public sale, at a less price, or that it has deteriorated ; and that these conditions must be affirmatively shown, in order to overcome the presumption raised by the inventory, by the parties seeking to overcome it.

The exception to the finding of the referee, as to the item of loss claimed as a credit, should be overruled, and the reports confirmed.

Ordered accordingly.