# SUPREME COURT.

## In the Matter of the Several Accountings of the Executors of WILLIAM TILDEN, deceased.

*Accountings of executors—Power of surrogates to vacate decrees in final accountings— General term of supreme court same power— Code of Civil Procedure, section 2481— When service of citation irregular— Power of surrogate to appoint guardians ad litem upon final accountings — Duty of such guardians— When decrees made upon final accountings will be opened and a rehearing ordered.*

The surrogate has power, under section 2481, Code of Civil Procedure, to open, vacate or set aside decrees in final accountings of executors.

The general term of the supreme court has the same power, and the surrogate's determination must be reviewed as if the application were original.

·Want of time in the service beyond the seas of a citation out of the surro-
gate's court makes such service irregular.

The surrogate had, previous to 1874, an inherent authority to appoint
guardians *ad litem* to look after the interest of next of kin, who are
minors, upon final accountings by executors, and it is the duty of such
guardian *ad litem* or special guardian to make special investigation into
the accounts of such executors for the proper protection of the minor's
interests.

A clause in the testator's will, "with liberty to pay over the rents, &c., of
the infant's one-fourth of the estate to the widow, the general guardian,"
cannot be construed so as to allow executors to make payment of said
rents, &c., to the infants direct, and then to take the widow's receipt
as authority for these payments.

An agreement between testator's heirs regulating the rights of each and
releasing several from claims for over advances by executors to such
heirs, does not relieve an executor from liability for the management
of the testator's personal estate.

*First Department, General Term, March,* 1884.

*Before* BRADY *and* DANIELS, *JJ.*

APPEAL from an order of the surrogate of the county of
New York, denying the application of Beverly B. Tilden to
open decrees made upon accountings of the executors of the
estate and for a rehearing of such accountings so far as they
affect the rights of the petitioner.

*William S. MacFarlane,* for appellant.

*C. E. Tracy,* for executors.

DANIELS, *J.* — The testator William Tilden, died on the
26th day of June, 1869, leaving a large real and personal
estate to be disposed of according to his will and codicils.
They were admitted to probate by the surrogate of the county
of New York on or about the 19th of July, 1869, and letters
testamentary were issued to four persons named in the will
as executors. Another person was added as executor early in
the year 1870, and a change was also afterwards made in that
year by substituting one other person in place of one of the

original executors who had died, and a similar change was made as to another in 1877. At the time of the decease of the testator, the petitioner was near the age of eleven years, he having attained his majority on or about the 10th of December, 1880. During his minority four accountings were had by the executors of the estate. The first in February, 1872; the second in the summer of 1874; the third in the spring of 1877, and the fourth in the spring of 1880.

The petitioner claimed, in support of his application, that improper charges had been made and allowed against him on each of these accountings. He also claimed that the executors had failed to enforce the guaranty of William Tilden Blodgett of second mortgages received by them in partial settlement of a large indebtedness in favor of the estate against him. If he was probably right in the complaints made by him, ample authority was given by subdivision 6 of section 2481 of the Code of Civil Procedure to the surrogate to open, vacate or set aside the decrees, so far as that might be necessary for the further examination of the items to which the application was directed, and upon appeal from the determination of the surrogate, *the general term of the supreme court has the same power as the surrogate ; and his determination must be reviewed as if an original application was made to that term.* Under this authority the entire controversy presented by the petition and the answer to it, is to be considered upon the appeal in the same manner in which the surrogate himself had the authority to consider it. In partial support of the allegations made, it was alleged and shown that no special guardian, or guardian *ad litem*, was appointed by the surrogate to take charge of the interests of the petitioner on the first accounting. His mother had been appointed by the testator's will his testamentary guardian, but they were in Germany when the citation was issued on the application of the executors, and it was served probably irregularly, at least for want of time (3 *R. S.* [*6th ed.*], 102, *sec.* 76), upon himself and his mother in that country. Neither she nor any other

party in any form appeared for him on the accounting to investigate or protect his interests. On the second accounting it is recited in the decree that a special guardian for this purpose was appointed by the surrogate, and a similar statement is contained in the decree on the third accounting, and on the fourth a guardian was appointed on the petition of the appellant himself. But it is alleged in his behalf that neither of these persons undertook or made any special investigation of his interests.

And as to the guardians on the second and third of the accountings, there seems to be good reason to believe that these charges of inattention made by him are well founded. Upon the fourth accounting the guardian has sworn that he did inform himself of all the facts bearing on the interest of the infant, for the period included in such accounting, from every source which seemed to him to be available. But that he resisted any of the charges made against his ward in the accounts has not been stated by him. Neither does the case made in his behalf, or in behalf of the executors, show that any special investigation took place at any time before the surrogate relative to the charges now complained of as improperly allowed to the executors. It has been urged, as chapter 156 of the Laws of 1874 specially conferred upon surrogates the authority to appoint special guardians on the accountings of executors, &c., that he had no power to make such appointment at the time of the first accounting of the executors. But in this position the executors do not appear to be sustained by authority. For before the enactment of this statute, it was practically held that the surrogate possessed the inherent authority arising out of the necessities of the situation, and the object to be attained by means of an accounting, to appoint a guardian *ad litem* to look after and protect the interest of the next of kin not appearing, who should be under the age of twenty-one years (*Kellet* agt. *Rathbun*, 4 *Paige*, 102). The fact that no statute existed requiring the exercise of this authority did not therefore justify the omission to make such an appoint-

Matter of Tilden.

ment. The hearing, so far as it affected the interests of the petitioner, which resulted in the decree following the first accounting was clearly irregular, and permitted the applicant to disaffirm its authority and apply for its reconsideration after he attained the age of twenty-one years (*Dayton on Surrogates*, [*3d ed.*,] 506, 507). The first accounting extended over a period of two years and about four months, and it included a general charge amounting to the sum of $13,880.58, *for one-fourth of the general expenses abroad, &c., and for house expenses, &c., to date*, which was the 1st of October, 1871. This was a large amount for the support, maintenance and education of the petitioner, who was then a boy of about eleven or twelve years of age, and the propriety of its investigation would seem to be suggested by its extent and the statement of it which was given. Other charges of a similar general nature were contained in the account settled on the other accountings, amounting in the aggregate to upwards of $27,000. Neither of those charges seem to have been challenged or resisted by either one of the guardians appointed to represent the petitioner on the second, third or fourth accountings, but they were wholly accepted and passed as they were contained in the executors' accounts. And by means of these and other charges extending to about the 29th of June, 1881, the sum of $84,757.15 was in the aggregate charged to have been advanced for the support, education and use of the petitioner. The amounts appropriated to this purpose during the period of his minority was on an average of about $7,705 each year. It may be that these charges were very properly made and that the executors discreetly and judiciously exercised the authority with which they had been invested by the testator. But inasmuch as they were in no manner made the subject of contest or investigation on behalf of the petitioner in the accountings which took place, a case was presented in which it would seem to be proper, after the attainment by him of the age of twenty-one years, to allow him to contest the propriety of these charges. In the second and third accountings

the appointment of the guardians seem to have been regarded as so entirely unimportant as to have constituted only a for mal compliance with what the law had required in that respect.

The guardians were of no service whatever to the rights and interest of their ward and apparently made no effort to investigate the propriety of any of the charges against him, although the duty to do so was significantly suggested by the large as well as very general charges against him contained in the accounts. For on the 31st of December, 1872, he was charged $5,441.88 for his share of the household expenses to date. On the 1st of May, 1873, a like charge of $2,800.99 was made. On the 31st of December of the same year another of $2,048.40, and on the 31st of December, 1874, a like charge of $4,803.24, during most of which period it is stated as a matter of fact that the petitioner was absent from home attending boarding school. The last item in the third accounting was equally as suggestive in the same respect, for instead of charging the petitioner with expenses paid out on his behalf, the joint expenses of himself and another was evidently divided, and in the division the sum of $7,050.60 was charged as his half, and very much the same seems to have been the course of proceeding as to the charges in the fourth accounting. The same propriety, therefore, manifestly exists for favorably considering his application for liberty to contest the items forming the subject of complaint on his part on each of these accountings. As he has applied with reasonable diligence for liberty to make such contest after he attained his full age and received information of the actual state of the accounts, the application was entitled to a liberal degree of consideration. And the same observation is pertinent to the alleged failure of the executors to enforce the guarantees of the second mortgages assigned to them by William T. Blodgett.

As to some of the charges affected by the complaint of the petitioner, it is alleged that the facts indicating them to be correct were within the knowledge of the executors. This complaint more especially relates to expenditures charging

him with one-fourth of the household expenses after the return
of the family from Europe, and to at least one item of $2,000
stated to have been paid to his mother for his board when he
was away at school, and did not board with her for any portion
of the time. The executors have asserted the correctness of
these charges on the ground that the household was maintained
in part by his mother as a home for the petitioner. They
have also insisted that they are entitled to the allowance of
the charges sustained by these several decrees, for the reason
that the petitioner's mother, as testamentary guardian, made
and delivered receipts including these charges to the executors.
But whether these grounds shall constitute satisfactory answers
to the complaints and objections presented in behalf of the
petitioner should not now be specially considered, for that
cannot be done satisfactorily upon the *ex parte* allegations or
affidavits made in support of or to resist such a proceeding.
For their adjustment the law has prescribed a different mode
of investigation, and that is by allowing the party whose inter-
ests are affected by the charges, upon evidence taken in the
usual way, to contest their legality and propriety, and as the
applicant was supplied with no adequate opportunity for doing
so during his minority, that privilege under the authorities
should still be accorded to him (*Dayton on Surrogates*
[3d ed.], 506, 507, 543).

The application has been further resisted under the latter
clause of twelfth paragraph of the will, by which the executors
were at liberty to pay over the rents, income and profits of
the infant's one-fourth of the estate directly to the widow, to
be laid out and expended in her discretion for his support,
education and comfort. But this authority was not exercised
by the executors. They did not pay these rents, income and
profits to her under this clause of the will, but they merely
allowed the charges made against the petitioner, taking her
receipts practically as their authority for these charges. And
if they did that, as it has been alleged they did, with good
reason to believe that the charges themselves were to a large

degree unfounded and improper, the receipts should have no such force or weight as to preclude the petitioner from still contesting the items to which he has specially objected. He may be unable to maintain the propriety of either of the objections urged in his behalf, but it is due to himself and also to the executors, who are men of high character, that an investigation should take place concerning the propriety of these objections. If they are not well founded, then the executors should not be subjected to the imputations which have been made, but they should be vindicated by the action of the proper authorities. While if they are well founded, the rights of the applicant can in no other manner be ascertained than by making a like investigation.

After the petitioner had attained the age of twenty-one years, an agreement was entered into between himself and his three older brothers for the settlement of their rights and interests in the testator's real estate, and its division between them. The two older brothers had received very much larger amounts from the testator's estate than the two brothers who were minors at the death of the testator, and the purpose of this agreement was to secure a division of the real estate upon the basis of the rights of the brothers under the will and codicils, and the proper adjustment of the amounts between themselves, which had been received by the oldest brothers. This agreement was carried into effect; the real estate was divided, and the amounts due from the older brothers to the younger ascertained and adjusted. And because of the making of this agreement and the action of the parties under it, it has been objected that the petitioner was after that disabled from questioning the accuracy of the accountings to which his complaints have now been directed. But the executors were not parties to this agreement. It was made wholly and exclusively by and between the brothers for a determination and settlement of their rights between themselves; and it in no manner relieved the executors from liability in their management and disposition of the personal estate of the testator    If

Matter of Tilden.

the applicant had valid claims against them which had neither been admitted or allowed, neither this agreement nor anything which took place under it released them from that liability, or precluded him from asserting and enforcing their existence against the executors. It was no part of the intention of the agreement entered into to relieve them in any respect from any liability arising out of their management and administration of the personal estate, and all that afterwards took place between the parties to it was simply by way of performing its stipulations and carrying them into effect.

As the case has been presented a reasonable right has been maintained to the success of the application. It may in the end result in no advantage whatever to the applicant, but if it does not the executors are entitled to have that known and ascertained for their own proper vindication. But if the charges made shall be sustained then the applicant is equally and as justly entitled to the benefits which may be secured to him in that manner.

Other points than those which have been considered have been presented in favor of the applicant and also of the executors, but in the view which has been taken of those already considered, these do not require to be discussed or determined. For without them there is sufficient in the case to require the order from which the appeal has been taken to be reversed and an order entered directing the four decrees to be so far set aside and vacated as to allow the charges drawn in controversy by the applicant to be made the subject of future investigation.

The order should be reversed and such an order entered, with the usual costs and disbursements.

BRADY, J., concurred.