KINGS COUNTY.—HON. J. I. BERGEN, SURROGATE.—
April, 1885.

WYCKOFF *v.* VAN SICLEN.

*In the matter of the estate of* ALBERT WYCKOFF, *deceased.*

Decedent's sole surviving executor, having instituted a special proceeding for the judicial settlement of his account, and omitted to charge himself, in the latter, with several items of assets set forth in the inventory, which was thereupon offered in evidence by objectors, for the purpose of charging him with the omitted items, he pleaded the statute of limitations as a bar, nearly twenty years having elapsed since the issue of letters testamentary, and the account never having been settled.—

*Held,* that the executor had waived this plea by his voluntary institution of the accounting proceeding.

It appeared that the accounting executor, who was a farmer, having in his hands $500 cash assets of the estate, handed this sum over to his co-executor, who was his uncle and a man of business, in good standing, in order that the latter might pay therewith the debts of decedent at his place of business, pursuant to advertisement. The latter having misappropriated the amount and died insolvent,—

*Held,* that the former was liable for the devastavit, and should be charged with the amount, but not with interest thereon.

Decedent's executor, who was appointed in 1855, voluntarily accounted in 1865, distributed all the funds of the estate then in his hands, and retained about $200 as his commissions, without objection from any of the beneficiaries. Upon a judicial settlement of his account, had in 1885,—

*Held,* that, in the absence of an allowance by the Surrogate, this sum had been improperly retained, and that the executor should be charged with the same, but, under the circumstances of the case, without interest.

HEARING of exceptions to report of referee, to whom were referred the account, and objections thereto, of J. W. Van Siclen, sole surviving executor of decedent's will, upon an application for judicial settlement. The referee, by his first conclusion of

law, found that the accounting party should be charged with a sum of $500, paid by him to his co-executor, by whom the same was misappropriated, less certain deductions specified; and that "no interest should be charged on this sum against said executor, J. W. Van Siclen, for the reason that he paid said sum of $500 to his co-executor in good faith, and for a proper and legitimate purpose of the estate, and at the time of said payment had no reason to suspect the integrity or solvency of his said co-executor." · Further facts are stated in the opinion.

SACKETT, LANG, REED & McKEWAN, *for executor.*

EDGAR BERGEN, *for Eliza J. Wyckoff, and others, objectors.*

THE SURROGATE.—The testator, Albert Wyckoff, died on September 15th, 1855, leaving a will, by which he appointed his brother, Jacob V. D. Wyckoff, and his nephew, John Wyckoff Van Siclen, executors thereof, and which was proved November 15th, 1855, letters testamentary thereon being granted on the same day.    Jacob V. D. Wyckoff died June 24th, 1857, insolvent, having made an assignment in April, 1857.

The surviving executor petitioned this court in November, 1882, for a final judicial settlement of his account as such executor.    Upon · filing the same, objections thereto were made by several of the persons interested in the estate.    Thereupon the account with the objections was referred to Herbert C Smith, Esq., to hear and determine.    The matter now comes up before me, upon exceptions filed to the confirmation of his report.

The accounting executor did not charge himself in his account with several items of assets set forth in the inventory. The contestants offered the inventory in evidence for the purpose of showing the amount of assets which came into the executor's hands. Objection was made by the executor's counsel, upon the ground that the statute of limitations was a bar to all the claims of the contestants, whereby they sought to charge him with assets in excess of those appearing in his account. If this objection is a valid one, it practically disposes of all the objections to the executor's account.

In this case, however, the executor has made a voluntary accounting, embracing some of the items mentioned in the inventory, and has caused all the parties interested in the estate to be cited to appear on such accounting, and prays that it may be judicially settled and allowed, and he be discharged as such executor.

There has never been any judicial settlement of the executor's account, and, while many years have elapsed since the death of the testator, it does not seem to me that, after making his voluntary account, he can now avail himself of the statute of limitations. He voluntarily submitted himself to the jurisdiction of this court by filing his petition and account, and he must be bound by such action and be deemed to have waived the statute of limitations (Calkins v. Isbell, 20 *N. Y.*, 147).

"If an executor upon being cited to account, instead of denying his liability cites all the parties in interest, he admits his liability to account" (Kellet

v. Rathbun, 4 *Paige*, 102). If not, why issue the citations? If the statute is a bar in this case, then the executor could have submitted any account he chose and asked that it might be judicially settled, and he be discharged from his trust. Hence I think that the referee was right in overruling the objection of the executor to admitting the inventory in evidence, as that is the first thing with which to charge himself (In re Jones, 1 *Redf.*, 263).

The accounting executor charged himself with cash assets amounting to only $216.44, while it appears from his testimony that he found among the testator's assets $716.44; that he counted the money and retained the sum of $216.44, and gave to his co-executor, J. V. D. Wyckoff, the rest of the money. And further on he says: " We advertised for debts against the testator and my co-executor was to pay them at his place of business, and I gave him the $500 for that purpose. I don't think that he paid any of the debts."

There is no doubt that his co-executor misappropriated the $500, and I think that the fact of the accounting executor having had all the cash assets in his hands, and he having given the $500 to his co-executor with which to pay the debts of the estate, and he having misappropriated the same, the accounting executor must be charged with the said sum less the amounts collected, as found by the referee in his seventh finding of fact (Croft v. Williams, 88 *N. Y.*, 384). But I agree with the referee that he should not be charged with interest, for the reasons given by the referee in his first conclusion of law.

In reference to the item of $964.47, being money deposited in the Long Island bank to the credit of the deceased, the testimony shows that Jacob V. D. Wyckoff drew this money without the knowledge or consent of the accounting executor, and converted the same to his own use ; and that the accounting executor discovered a day or two afterwards from his co-executor, that he had drawn the same and would replace the money.   He says : "I demanded this money back from Mr. Wyckoff some little time afterwards, to the best of my recollection about six months after he had it.   He said he had to use some money. I am not positive as to what he wanted to use it for. He did not want it for the purposes of the estate of Albert Wyckoff, deceased."

The referee has sought to charge the accounting executor with that amount upon the ground that he had knowledge of the fact of such withdrawal and conversion, and neglected to take any proceedings whatever to recover the money for the estate until nearly two years afterwards, and not until the said Wyckoff had become insolvent.

I do not think, however, that the testimony will warrant so broad a finding of fact, namely, " that he had knowledge of the fact of such withdrawal and conversion," etc.   For the testimony of Mr. Van Siclen is clear and uncontradicted, that he knew nothing of the withdrawal of the funds from the bank until after the same had been done by his co-executor, and that, when he discovered it, he went to Mr. Wyckoff and expressed surprise by saying to him, that he did not think that he could draw it with-

out his consent, whereupon Mr. Wyckoff promised to replace the same.

Mr. Wyckoff, at that time, was a man in good financial standing, and his co-executor had no reason to apprehend that the money would be misappropriated, and I think that Mr. Van Siclen should not be charged with the amount so drawn by Mr. Wyckoff from the bank, as I do not believe that any of the funds came into his hands, or was lost by any neglect or failure on the part of Mr. Van Siclen to discharge his duties, nor by any affirmative act or acquiescence on his part, but on the contrary, that the loss resulted wholly and exclusively from the misconduct of Mr. Wyckoff. When it was discovered by Mr. Van Siclen that Mr. Wyckoff had misappropriated the fund, he took immediate steps for the recovery of the same against the assignee of his co-executor (Wilmerding v. McKesson, 28 *Hun*, 184, *and cases cited*).

\*      \*      \*      \*      \*      \*      \*

In relation to the item of $197.46 retained by the executor for commissions in 1864, and disallowed by the referee for the reason that no accounting had been had before the Surrogate, and no sum allowed by him for commissions, there is no doubt the general rule is, that executors should not retain, nor take out of the funds of the estate, their commissions until their accounts have been passed by the Surrogate, and their commissions fixed and allowed by him. But in this case it will be noticed that the executor had been acting as such for nearly ten years, before he had the estate in such a position as to be able to distribute it among the parties entitled thereto. It ap-

pears, according to his accounts, that he distributed all of the funds of the estate in his hands in January, 1865; that he voluntarily accounted and paid over to the beneficiaries under the said will all of the funds in his hands at that time, and retained to himself the item of $197.46 as his commissions, and no objections were made thereto.   He rested his account at that time, and has only collected $345 since that time.

While I think the referee was right in disallowing the same, still I think it would be manifestly unjust to punish him by requiring him to pay interest on the same from 1865 to date.

This case is one of exceeding great hardship on the accounting executor, for it appears that the principal contestant is the widow of Wyckoff, the delinquent· executor, and through whose acts all the loss has occurred to the estate.

I have discovered in the evidence no fact which would justify me in charging Mr. Van Siclen with a *devastavit* committed by his co-executor, Mr. Wyckoff, except the payment by him of the $500 to his co-executor out of the cash assets in his hands for the purpose of paying the debts of the testator, and which his co-executor misappropriated.   The testator was a resident of Kings county, and by his will he made his brother, Wyckoff, who was then a merchant, doing business in the city of New York, of good reputation and financial standing, and his nephew, Van Siclen, a farmer, and then a young man, his executors and trustees.   It was but natural that his brother, being a business man, and older and much

more experienced in financial matters, should have taken upon himself the principal management of the estate. And Mr. Van Siclen being the younger, and not accustomed to accounts and the management of estates, deferred to the judgment of his uncle, until he discovered that his uncle was insolvent, and then he took the active management of it and saved what he could by foreclosing mortgages, bringing suits against the assignee of his uncle, collecting rents and paying off mortgages, thereby saving a considerable amount to the estate.

I have carefully reviewed all of the testimony in this case, and am of the opinion, that the referee's report in all other respects, except as herein modified, should be confirmed, for the reasons set forth therein.