In the Matter of the Estate of ENOS S. T. RICHARDSON, Deceased.*

Surrogate's Court, Kings County, December 24, 1928.

* Cited in *Matter of Flint* (148 Misc. 474); published at this time to complete the report; modified and affirmed, 229 App. Div. 738; reversed on consent, 255 N. Y. 632.

*Stewart & Shearer,* for the United States Trust Company, trustee.

*Greene & Hurd* [*F. B. Hamlin* of counsel], for Richard S. Earl, executor.

*Conrad Saxe Keyes,* special guardian for Enos Richardson, 4th, and Virginia Holland Richardson.

*Thomas H. Troy,* referee.

WINGATE, S. This matter seems to have proceeded on the wholly wrong theory that if trustees' accounts show a loss of substantially one-fifth of the corpus of the trust, no explanation is required of them, but the sufferers are under the burden of showing that the loss is due to the trustees' improper conduct. Such is not the law. Trustees in the face of such a loss are under the burden of showing facts and circumstances to establish they are without fault in the matter. (*Underhill* v. *Newburger,* 4 Redf. 499.) On the contrary, evidence as to the financial condition of the bank in whose stocks the investment was continued, and even increased, and which was liquidated at a capital loss to this estate of $62,787.50, was not attempted to be furnished by the trustees, but was objected to by

them when offered by the special guardian and at their instance excluded.

The trustees urge that their acts in retaining the investment in the stock in question were by the decree of July 31, 1914, approved to May 7, 1914, but that the amount stated in the decree as the amount of money with which they are thereby charged is not binding.

The account, settled by the decree, is dated two days before the assets of the bank were taken over by another bank to secure depositors, and was verified over a month after the national bank examiner had reported the impairment of the bank's capital, and indicated no loss in the capital of the trust.

The decree sounds in money and the trustees are charged with the specific sum for which they remain accountable.

If there was a diminution in value prior to May 7, 1914, they are estopped by the decree from setting it up, especially if they were aware of the circumstances when they made the account.

One of the trustees was president of the bank whose stock was held by the trustees. The other trustee was a trust company.

The will authorized the trustees " in their discretion to continue any and all investments in which my estate shall be found at the time of my decease, and to reinvest in the same securities." Their responsibility as to this investment was no less than it was to any legal investment. In fact, it was somewhat greater. Such special investments must be scrutinized with great care. The trustees owed the beneficiary the duty of excluding all private interests and of conducting the trust to the sole advantage of the *cestui que trust*. (*Gould* v. *Gould*, 126 Misc. 54, at p. 62.)

The investment was in the stock of a corporation of which one of the trustees was a stockholder and the president.

" Where a trustee is acting under a discretionary power   *   *   * he owes an undivided duty to the estate, and must act in the most scrupulous good faith for the benefit of the beneficiaries, uninfluenced by other considerations." (*Gould* v. *Gould, supra; Pyle* v. *Pyle*, 137 App. Div. 568; *Carrier* v. *Carrier*, 226 N. Y. 114.)

It is a fundamental rule relating to the acts of a testamentary trustee that he must not only act for the benefit of the trust estate, but in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him for himself. He owes an undivided duty to his beneficiary, and he must not under any circumstances place himself in a position whereby his personal interests will come in conflict with the interests of his *cestui que trust*. The purpose sought to be secured by this rule of law is to require a trustee to assume a position where his every act is above

suspicion, and the trust estate, and it alone, can receive not only his best services, but his unbiased and uninfluenced judgment. (*Pyle* v. *Pyle, supra.*)

Earl must be presumed to have known the condition of his bank. His personal interests were secondary to his fiduciary interests.

The corporate trustee apparently relied on the judgment of the individual trustee. In doing so it assumed the risk of just what occurred. Under the circumstances it was bound to exercise a greater care. At least one of its officials was " reluctant " to invest trust funds in bank stocks and opposed subscribing to the rights; and yet it was done. Can it be urged that this is all the security afforded by the addition of a corporate cotrustee? In effect, the trust company permitted Earl to keep invested and reinvest trust funds in the stock of his own company, and the trust funds were very largely lost.

The motion to confirm the referee's report is denied, the report is set aside, the objections of the special guardian are sustained, and both trustees will be surcharged with the amount of capital loss, with interest at six per cent from the date of the capital loss to the trust estate. Settle decree on notice.