HENRY E. BERGELT and Others, Plaintiffs, *v.* NICHOLAS ROBERTS and Others, Defendants.

INDUSTRIAL AND REALTY FINANCIAL CORPORATION and Others, Plaintiffs, *v.* S. W. STRAUS & Co., INC., and Others, Defendants.*

WILLIAM COHEN, Plaintiff, *v.* S. W. STRAUS & Co., INC., and Others, Defendants.

Supreme Court, New York County, August 4, 1932.

* Affd., 236 App. Div. 777.

*Breed, Abbott & Morgan* [*Charles H. Tuttle* of counsel], for Henry E. Bergelt and others.

*Pollock & Nemerov,* for Industrial and Realty Financial Corporation and others.

*Simpson, Thacher & Bartlett,* for the defendant S. W. Straus & Co., Inc., and others.

*Samuel Seabury,* for General Committee for the Protection of Real Estate Bondholders, *amicus curiæ.*

COLLINS, J.   These three motions evolve from a contest between the majority and minority bondholders of the 502 Park Avenue Building, known as the Delmonico Hotel.   The majority are represented by the S. W. Straus interests, who underwrote and distributed the bonds, are peculiarly related to the enterprise, and who, now that there has been a default, project, sponsor and dominate a reorganization plan.   The plaintiffs, who represent the minority group, suing for themselves and others similarly situated, are dissenters from that plan.   Embraced as defendants are the members of the reorganization committee, S. W. Straus & Co., Inc., a Delaware corporation, which is the parent of another defendant, S. W. Straus & Co., Inc., a domestic corporation, the Continental Bank and Trust Company of New York, successor trustee under the trust mortgage and depositary under the reorganization plan, 502 Park Avenue Corporation, mortgagor, and the Delmonico Corporation, the present fee owner of the Delmonico Hotel. Appearing *amicus curiæ,* in support of part of the relief demanded, is the General Committee for the Protection of Real Estate Bondholders.   Actions have been commenced assailing the plan and seeking to prevent its consummation.   Pending the determination of the actions these motions demand temporary relief: (1) Enjoining all further proceedings under or in connection with the plan; (2) restraining the pending action heretofore instituted by the Continental Bank and Trust Company, as trustee, for the foreclosure of the mortgage, and which foreclosure forms part of the reorganization plan; (3) compelling the disclosure to the plaintiffs of the names and addresses of the purchasers and holders of bonds covering the

Delmonico property; (4) appointing a receiver to serve and protect the interests of the bondholders; (5) removing the reorganization committee and substituting a new committee; and (6) ousting the Continental Bank and Trust Company from the trusteeship.

The attack on the plan proceeds upon the charge that it was promulgated by the Straus organization, and its performance intrusted to Straus' interests, that Straus' interests are inconsistent with the duties and obligations owing to the bondholders, and that there is such hostility between the private concerns of Straus and the concerns of the bondholders as to taint any committee controlled by Straus. It is maintained that the Straus committee is not possessed of that disinterestedness with which a fiduciary must be imbued to achieve a conscientious administration of the trust. The peculiar circumstances are emphasized as indicating that the Straus committee must necessarily be motivated by, and invested with, the self-interest of Straus. The plan itself is condemned as needless and vicious, and its provisions are disapproved as subversive of the bondholders' rights. Disclosure of the names of bondholders is sought to enable communication and conference among those having a community of interest. The plaintiffs insist that the bondholders, many in number and widely scattered, are accessible only to Straus; that the bondholders receive such information as Straus foists upon them, and that mutuality of interest in trust property compels the opening of opportunity to all like-interested to unify and strive for their common protection. The defendants answer that they have acted, and are acting, honestly and for the good of the bondholders. The Straus organization disclaims self-aggrandizement. The reorganization committee protests its independence.

The plan is praised as the bondholders' only salvation. There is stout denial of the accusation of sacrificing the bondholders for the survival of Straus. The Continental Bank and Trust Company contradicts the claim that it is submissive to Straus and affirms its allegiance to both the spirit and the verbiage of the trust agreement. The defendants challenge, not only the necessity for relief, but the legal right thereto. The six per cent first mortgage bonds in suit, aggregating $3,800,000 in amount, were issued in June, 1926, by defendant 502 Park Avenue Corporation, the then owner of the Delmonico Hotel site, and were underwritten and sold to the public by the defendant S. W. Straus & Co. The plaintiffs assert that Straus profited by the underwriting transaction to the extent of approximately $380,000. The plaintiffs charge that in the high-pressured sale of the bonds misrepresentations were made which induced their purchase.

It is unnecessary to here analyze these alleged misrepresentations or to pronounce judgment upon them. Certainly they are so serious

as to prompt the court to pause before countenancing the consummation of a plan which might preclude recourse to such redress as the true facts warrant.   Certain features of the Straus system of marketing securities have been questioned by the State Attorney-General.   It seems that the system exposed here of reaping profit through underwriting, managing, insuring, banking and the utilization of trust funds weakens and inflates the security.   To answer that the practice is general enhances rather than excuses the danger. That the investing public would gain by a more simplified and independent policy, free from machinations and entangling financial alliances, is obvious.   The court is not unmindful that it is here concerned with the legal rights of litigants and not with economic or business policies.   It is not the court's province to censure or chart the course of business or to undertake the control of business institutions.   But, when the court is confronted with a situation which necessarily involves the propriety of a particular course, the court cannot, and will not, escape from its manifest duty of pronouncing judgment thereon.

The defendant Delmonico Corporation acquired title to the mortgaged premises in May, 1929, subject to the mortgage, but not assuming payment of the bonds.   This defendant also equipped the hotel with furnishings, but whether such furnishings now belong to the Delmonico Corporation or whether they became subject to the first mortgage, or whether others may rightfully claim and remove them, has been thrown into confusion.   In 1931 the sinking fund provided for in the trust mortgage suffered a deficit of $100,000, and real estate taxes, amounting to $111,500, became past due and remain unpaid.   Defaults having occurred, the Straus organization proceeded to reorganize the project under the guidance and direction of a committee manned and controlled by Straus.   A deposit agreement, dated November, 1931, outlines the reorganization plan and prescribes the time within which bondholders may assent thereto and deposit their bonds.   About eighty-seven per cent of the bondholders have deposited their bonds with the Straus committee.   In May, 1932, the dissenters formed their own committee.   As a part of the reorganization plan, the successor trustee, Continental Bank and Trust Company, by direction of fifty-one per cent of the bondholders (as provided in the trust mortgage), launched a foreclosure action.   No receiver in that proceeding has been named, as the trustee has assumed the functions of a receiver.

1. The first item of relief prayed for is that the scheme of reorganization be restrained pending the determination of the actions, one of which has been set down for trial for October 10, 1932.   This court is not now called upon to pass final judgment upon the plan. That is for the trial court.   The present concern is whether a *prima*

*facie* case for a permanent restraining order appears (*McHenry* v. *Jewett*, 90 N. Y. 58; *Goldman* v. *Corn*, 111 App. Div. 674), whether the defendants are doing or threatening to do plaintiffs some injury which plaintiffs have a right to enjoin (*Interborough Rapid Transit Co.* v. *Lavin*, 247 N. Y. 65), and whether the threatened injury is so irreparable as to justify the intervention of equity. (*Brass* v. *Rathbone*, 153 N. Y. 435.) Since a trial on the merits can be had within sixty days, have the plaintiffs presented such a case as to authorize the court to halt further steps under the reorganization plan for that period? I am persuaded that they have. This conclusion does not necessitate disapproval of every item of the plan. I am convinced that its merits are not such as to compel its immediate consummation. Indeed, there is apparent danger that the bondholders' interests will be wrecked. Some of the plan's salient features seem grossly unjust. Others are not free from inequity. I cannot perceive that harm can fall upon the bondholders by deferring execution of the plan until the trial. I can perceive that irreparable wrong might result from precipitous action. The advantages of immediate foreclosure are not patent. The contrary would appear. The building even in these troublesome times is paying nearly all carrying charges. No adequate reason is presented why the bondholders should accept security of questionable value for what they now have.

The threat that, unless $145,000 is paid promptly to the claimants to the furniture, the operation of the hotel will be embarrassed, does not impress me as sufficient to assume the risk of stripping the bondholders of $3,800,000. The defendants earnestly insist that the plaintiffs are without standing in this court. But the committee defendants have undertaken the execution of a trust. They are fiduciaries, and as such are amenable to a court of equity. The rights of a minority cannot be annihilated by a self-seeking majority. (*Sage* v. *Central R. Co.*, 99 U. S. 334; 25 L. Ed. 394.) " Community of interest involves mutual obligation." (*Jackson* v. *Ludeling*, 88 U. S. [21 Wall.] 616, 622; 22 L. Ed. 492; *Southern Pacific Co.* v. *Bogert*, 250 U. S. 483, 487; 39 S. Ct. 533; 63 L. Ed. 1099.) The vigilant eye of equity may penetrate the administration of a trust, and its conscience must be satisfied that justice has been done. (*Investment Registry* v. *Chicago & M. E. R. Co.*, [C. C. A.] 212 Fed. 594, 609; [D. C.] 213 id. 492; *Louisville Trust Co.* v. *Louisville, N. A. & C. R. Co.*, 174 U. S. 674, 683, 688; 19 S. Ct. 827; 43 L. Ed. 1130.) " A trustee is held to something stricter than the morals of the market place." (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464; *Munson* v. *Syracuse, G. & C. R. Co.*, 103 id. 58, 74; *Industrial & General Trust* v. *Tod*, 180 id. 215, 225.)

It is not intended here to thrust the defendants' conduct into the category of dishonesty or wrongdoing or faithlessness to trust or obligation. They may be acting with fidelity and honor and credit. They may be discharging their duties for the bondholders' welfare. But they are fiduciaries, and as such must account to equity. The assumption of a trust relationship implies a willingness and obligation to lay bare the stewardship. The court charged with the sacred duty of scrutinizing trust managements cannot be denied access to trust affairs. As regards the trust, a trustee should have no secrets from a court of equity. It may be that this litigation, as the defendants declare, is but the natural outcry of disillusioned investors. Certainly Straus cannot be censured for the uncontrolled and general economic reversal which in its wide and devasting sweep has made waste of these and other securities. But the good faith of the plaintiffs is not challenged. They have no ulterior motive in opposing the plan. They charge the failure of the Delmonico Hotel project to vices inherent in the Straus system and policies. Their significant accusations cannot be ignored. Concluding this phase of the motions, the application for a temporary order restraining further proceedings under and in connection with the reorganization plan will be granted.

2. No ground is shown for enjoining the prosecution of the foreclosure action. Apparently the trustee is acting within its rights and at the direction of fifty-one per cent of the bondholders. If the non-prosecution of that action is deemed necessary or proper, application therefor must be made therein and not in a separate suit. Since, however, foreclosure forms an essential and indispensable feature of the reorganization plan, it would seem unlikely that the foreclosure action will be pressed pending final decision on the plan. The request that the foreclosure action be enjoined will be denied.

3. The application for the disclosure of bondholders is made perplexing because clear precedent therefor is wanting. Neither rule 8 of the Rules of Civil Practice, nor section 324 of the Civil Practice Act, nor the cases thereunder, support the plaintiffs' view. Rule 8 authorizes the court to prescribe the manner of presenting claims and notifying creditors in collective benefit actions. It does not empower the court to do what is here asked. The provisions of section 324 are restricted to inspection and discovery of documents to be used in evidence in support of the cause of action or defense. (*People ex rel. Lemon* v. *Supreme Court of State of New York*, 245 N. Y. 24; *Walsh* v. *Press Co.*, 48 App. Div. 333; *Romer* v. *Kensico Cemetery*, 79 id. 100; *Bencoe* v. *McDonnell*, 210 id. 123.) Obviously section 324 is not apposite. In equity, however, the absence of a precedent is not fatal. Times change, and the law must change with

them. Fundamentals remain immutable, but their application must be attuned to the necessities. General progress does not exclude growth of the law; rather, it demands it. The absence of a precedent does not negative the existence of a right, and, where the right demands recognition and enforcement, equity should respond. Precedent is "merely a guide but never a bar." (*Rice* v. *Van Vranken*, 132 Misc. 82, 87; affd., 225 App. Div. 179.) Analogy may be found in the conceded right of a stockholder to obtain the names of fellow stockholders when sought for the protection of joint interests. Again, "*cestuis que trust* have a right at all seasonable times to inspect the documents relating to the trust. * * * " (Lewin Trusts [13th ed.], p. 662.) "Where the relation of trustees and *cestuis que trust* is admitted or clearly established, the *cestuis que trust*, as the true owners of the fund, have the right to the production and inspection of all documents and papers relating to it." (2 Perry Trusts & Trustees [6th ed.], § 822.)

What harm can ensue from granting the disclosure? Secrecy where the interests of the investing public are concerned should not be encouraged. The contesting committees are not competitors within the meaning of the authorities disallowing access by one competitor to the names of a rival's customers. The bondholders ought to be allowed to organize for their mutual benefit if they so desire. This cannot be done without their identification. What is best for the bondholders is the court's paramount concern. Mr. Justice LEVY granted an application for like relief in *Hartford* v. *Commonwealth* (no opinion). It is not intended here to hold that in all cases of bondholders' committees disclosure should be ordered. We are dealing with this particular situation. To object that this precedent will be abused is to say that the courts will aid in the abuse, since the right to exercise the power resides in the courts. The court should not refrain from exercising a power when the facts call for the exercise for fear that the power may be misused in other instances. The courts can be trusted to treat each case as its merits warrant. The application for disclosure will be granted.

4. A receiver will not be appointed. Necessity therefor does not exist. Nor is it clear what a receiver would receive or hold or what functions he would perform.

5. There is no occasion for removing the reorganization committee. Fraud or bad faith is not sufficiently proved.

6. The demand that the trustee, Continental Bank and Trust Company, be ousted will be denied. Its integrity is not impugned. Faithlessness to its trust is not established. The vague claim that it is interested in the furnishings appears to be successfully refuted. Trustees are not to be removed unless the facts disclose violation of

the trust obligation or unsuitableness. (*Gould* v. *Gould*, 203 App. Div. 807, 808.)

Summarizing, relief is granted to the extent of restraining the consummation of or further proceedings under the reorganization plan and ordering the disclosure of bondholders. In all other respects the motions are denied. There is no objection to the application for leave to serve an amended complaint. Accordingly, such application is granted: Settle orders.