In the Matter of the Estate of ADELE E. FLINT, Deceased.

Surrogate's Court, Westchester County, July 13, 1933.

*King, Barr & Robbins* [*William G. Barr* of counsel], for Central Hanover Bank and Trust Company, as trustee.

*Strang & Taylor*, for William H. Flint, trust beneficiary.

*Herbert P. Queal* [*Herbert P. Queal* and *John A. V. Murphy* of counsel], for the National Iron Bank, Edward J. Storb and T. Edmund Wills, objectants.

*Edward J. Wren*, for the North River Mortgage Company, assignee.

*Benjamin C. Harvey*, for Helen Croner, assignee.

*Arthur Braun*, for Hattie Potasch and Julius Filler, assignees.

*Jonathan Holden*, for Amanda L. Washburn and Westchester Mortgage Company, assignees.

*P. Chauncey Anderson*, for the Purchase Street Realty Corporation, assignee.

*Fred L. Merritt*, for George W. Mahlstedt, judgment creditor.

*Edgar C. Beecroft*, for Dorothy O. Shubert, Inc., judgment creditor.

SLATER, S.  This is an account of proceedings of the Central Hanover Bank and Trust Company, as trustee of the trust for William H. Flint created by the last will and testament of Adele

E. Flint, deceased. The trustee's account of proceedings filed December 16, 1932, carried to December 9, 1932. The trustees filed a supplemental account January 6, 1933, carrying down to January 4, 1933. On May 19, 1933, objections to the account and the supplemental account were filed by the National Iron Bank of Pottstown, Penn., and by Edward J. Storbs, trustee under a deed. of trust executed by William H. Flint. Supplemental objections to the trustee's account and supplemental account were filed on June 16, 1933, by the same parties.

Adele E. Flint died September 19, 1920, and her will was admitted to probate January 7, 1921. The will, after providing for a number of bequests and legacies, directed the executor to divide the residuary estate into as many equal shares as should be the number of the ten nephews and nieces therein named who should survive her, including the nephew William H. Flint who survived the testatrix. As to his one-tenth share of the residuary estate, the will provided as follows: " If the said William H. Flint, my nephew, survive me, I give, devise and bequeath one of the said equal shares to Central Union Trust Company of New York, in trust, nevertheless, to hold, manage, invest and reinvest the same, and to collect and receive the income thereof, and to pay over to my said nephew, William H. Flint, the income from said share in semi-annual payments until he shall reach the age of forty-five years, and then to transfer and deliver to him the principal of the said share theretofore held in trust for him as aforesaid; or, if he should die before reaching the age of forty-five years, then upon his death to divide and distribute the said share equally among the others of my nephews and nieces hereinabove mentioned, who survive him."

The nineteenth paragraph of the will empowered the executor and the trustee " in its discretion to retain any investments owned by me at the time of my decease, and from time to time to sell, vary or exchange the same, or any investments made by said Executor or Trustee, and to invest any funds at any time in the hands of said Executor or said Trustee, in such manner as said Executor or said Trustee *shall deem wise*, without being restricted to the class of investments which alone an Executor or Trustee is authorized by law to make."

The Central Union Trust Company, as named in the will, has been absorbed and is now known as the Central Hanover Bank and Trust Company.

The executor duly accounted as shown by decree of this court dated January 16, 1922, amended by decree dated April 20, 1922. A further account of proceedings of the said executor was judicially settled by decree dated November 10, 1924. The accounts show

that the corpus of the estate in the hands of the executor-trustee was in *money*.

William H. Flint, the beneficiary, was born December 9, 1887, and reached the age of forty-five years on the 9th day of December, 1932, at which time the trust for his benefit ceased and he became entitled to the principal of the trust property, subject to the claims of assignees and lienors.

At the termination of the trust the executor-trustee had in the fund $35,850 in participations, some past due and uncollected, others not yet due, and a 1/197 interest in a parcel of real estate and a 5/83 interest in another parcel of real estate. There was complete lack of diversification of the investment, all in one kind.

The percentage of total mortgages in the trust shares ranges from five-tenths per cent up to forty per cent.

Only $8,000 of the trust fund was invested in shares which represented 1/10 or more of their respective mortgages. The sum of $5,000 was invested in a 1/18 share (the Ninety-third street property, now foreclosed). The balance of $28,500, being over half the trust, was put into shares ranging from 4/175 (the Mount Kisco property) down to 1/510 (the East Fifty-third street property).

Schedule " F " of the supplemental account shows, as to the property foreclosed, a share of 5/83 in one parcel, and 1/197 in another. In the duration of the trust the trustee received various alleged assignments and mortgages made by said William H. Flint of his interest. In this accounting proceeding the status of the claims of the assignees of William H. Flint was referred to a referee on January 20, 1933. The report of the referee was filed March 16, 1933. It set forth the assignments in their order of priority in favor of several different persons in amount $36,936.99, leaving a balance of principal payable to William H. Flint of $5,439.62. Since the filing of the report the interest of William H. Flint has been made subject to an attachment in favor of Edward L. Holley, copy of which was filed in this court on May 17, 1933.

The referee's report was modified and confirmed June 22, 1933.

In the account of proceedings the executor-trustee charges itself with $42,545.74, under Schedule " A," cash received as principal from executor showing that, beginning on June 13, 1921, and at various dates until November 26, 1924, cash was received by the trustee from itself as executor for the trust herein accounted for. The account also shows that the trust fund has been entirely invested in shares or parts of mortgages in various amounts generally known as " participations."

The objection of the main assignees of the beneficiary, the National Iron Bank and Edward J. Storbs, trustees under the deed of trust,

related to the duty of the trustee to invest the corpus of the trust. It is their contention that it should have been so invested that it could have been liquidated and turned into cash on or before William H. Flint reached the age of forty-five years on December 9, 1932; that said shares or parts of such bonds and mortgages were purchased by the trustee from itself in its individual capacity as a trust company at a price in excess of the fair market value at the time of the purchase; that said shares or parts were not liquid or readily convertible into cash, and there is at the present time no market whatever for them since said trustee chooses not to repurchase them; that said shares or participations in mortgages were not at the time they were purchased proper, reasonable or prudent investments, and were not permitted in and by the will creating and defining the trust; that said investments were made by the trustee at its sole risk and that said trustee is liable for all losses; that said trustee should be directed to sell such participations or shares and be surcharged with the difference between the profits of such sale and the face value, plus accrued interest on said participation or shares, or, at its option, be permitted to repurchase from itself as trustee said shares or parts of said mortgages. The same objection runs to the investments in mortgage shares of which the underlying general mortgages have since been foreclosed and the trustee holds an undivided interest in the real estate.

It is the contention of the executor-trustee that it had a right to purchase such parts or shares of mortgages: (1) Under the provisions of the nineteenth paragraph of the will which permitted the trustee to invest in such securities as it *shall deem wise;* (2) under the authority of subdivision 7 of section 188 of the Banking Law, as amended by chapter 385 of the Laws of 1917.

During the last generation, coincident with the expansion of business, there has come into being through legislative enactment a permission for executors and trustees, individual and corporate, to make investment of trust funds in a hitherto unknown kind of securities generally termed (1) guaranteed mortgage certificates; (2) parts or shares of a mortgage generally known as " *participations.*" In the instant case we are interested in the second form of investment.

One of the first cases dealing with this form of investment is *Barry* v. *Lambert* (98 N. Y. 300 [1885]). This case had to do with a small affair, an investment of $2,000 to make up the sum of $8,000 loaned. The court found no difficulty arising from the blending of the money of the estate with that of another person in the same loan, for, the units of which it is composed being of equal value, it

is clearly severable and distinguishable. The court approved the practice.

The question again arose in *Matter of Union Trust Co. (Hoffman Estate)* (219 N. Y. 514 [Dec. 1916]), with regard to whether trustees should seek such form of investment and be free from liability. In this case the trust company, wholly for its own convenience, invested different trust funds in bonds and mortgages in its name and in its own right, without always executing and delivering a contemporaneous trust instrument. The method of keeping the trust funds is noted in the opinion. The court said that the trust company, when foreclosing a mortgage so held by it, does so in its own right, treating it at least as property, the legal title to which is absolutely and unqualifiedly in it.

The dissenting opinion showed that the court in effect approved the practice without disapproving the principle.

A few months later, at the legislative session of 1917 the Legislature was asked to, and did, amend the Banking Law, amending subdivision 7 of section 188, with regard to this form of investment. (Laws of 1917, chap. 385.) Subdivision 7, prior to the amendment, provided that " All investments of money received by any such corporation, and by any trust company * * * as executor * * * or testamentary trustee * * * shall be at its sole risk, * * * unless the investments are such as are proper when made by an individual acting as trustee, executor, * * * or such as are permitted in and by the instrument or words creating or defining the trust." This was not changed by legislative enactment.

The amendment of 1917 provides in part that " Investments in bond and mortgage by any such *corporation* as executor, administrator, guardian, personal or testamentary trustee, receiver, committee or depositary *may be made* by apportioning to any estate or fund held by such corporation in any of such capacities a part interest in a bond and mortgage held by or in the name of such corporation, individually or in any representative capacity, and any such part interest may be repurchased at its face value by such corporation individually or in any representative capacity; but such bond and mortgage shall be a legal investment for trustees under the laws of this state and the records of such corporation shall at all times show every interest in the said bond and mortgage and any part interest in such bond and mortgage so apportioned shall at all times be and remain at least equal in lien to any other interest therein and such corporation shall promptly notify each person of full age and sound mind entitled to the income therefrom of the fact that such investment has been made. Any moneys of any such estate or fund

awaiting investment or distribution may be held on deposit by such corporation in its own name, subject to the provisions of subdivision eleven of this section; provided that appropriate entries showing the share or interest of each such estate or fund in the moneys so held on deposit shall, at all times, appear upon the records of such corporation."

The Legislature did not extend this privilege to savings banks.

It is a rule of law that a trustee cannot buy from himself. This old-established legal principle was disregarded when section 188 of the Banking Law was enacted.

The amendment *merely permits* investment to be made by *corporate fiduciaries*, at their own risk, in bond and mortgage and apportionment of part interests therein to any estate or fund held under its trusts as executor, trustee, etc., thus by legislative enactment legitimatizing the practice.

The form of investment first above referred to responds to section 111 of the Decedent Estate Law, as amended, and section 21 of the Personal Property Law, as amended. These sections provide for the investment of trust funds by a fiduciary in *certificates* to be issued under and pursuant to the terms of the law as to guaranties, etc. These terms were written into the law by chapter 362 of the Laws of 1928. The prior law and the present law carry this provision: " But no trustee shall purchase securities hereunder from himself."

It is not claimed, nor is it here held, that the sections of the Decedent Estate Law or Personal Property Law amend or repeal the provisions of section 188 of the Banking Law. (*Matter of Thomson*, 135 Misc. 62 [1929].) This case had to do with the provisions of the Decedent Estate Law and the Personal Property Law with regard to investment of trust funds. Surrogate O'BRIEN held that a corporate trustee does not make an investment prohibited by section 111 of the Decedent Estate Law and section 21 of the Personal Property Law, where it issues a participation certificate in a *guaranteed mortgage* owned by it and assigns such certificate to itself as trustee. He held that such a transaction is valid under subdivision 7 of section 188 of the Banking Law, as amended by chapter 385 of the Laws of 1917. He further held that the re-enactment of section 111 of the Decedent Estate Law and section 21 of the Personal Property Law made subsequent to the enactment of subdivision 7 of section 188 of the Banking Law did not repeal the latter statute.

Another case dealing with section 21 of the Personal Property Law and section 111 of the Decedent Estate Law is *Matter of Allen* (142 Misc. 113 [1931]).

In my opinion the law permits two forms of investment to be made by trustees, separate and distinct one from the other: (1) Under the Banking Law, section 188, subdivision 7, the *corporate fiduciary may invest* by taking a part interest or " participation " in a bond and mortgage held in the name of the corporation; (2) under section 111 of the Decedent Estate Law and section 21 of the Personal Property Law, an executor or trustee *may invest* in *guaranteed mortgage certificates.* (*Matter of Cady,* 211 App. Div. 373, 375.)

It is shown by the prior account of the executor, and it is admitted that it had knowledge of the fact, that William H. Flint would arrive at the age of forty-five years on December 9, 1932. It also had knowledge of Flint's financial condition and of his various assignments of interest in the corpus, and of the claims of his assignees.

The contentions arising herein resolve themselves into two: (1) Was the executor-trustee improvident in investing the *money* of this trust in parts or shares of mortgages known as " participations?" (2) Was the executor-trustee negligent in failing to arrange to pay the *principal of the fund* in *money* to William H. Flint or his assignees on December 9, 1932?

The method of making investments known as " participations " is something like this: When a mortgage loan is accepted by the trust company and the time comes for closing, the amount loaned is paid by the check of the trust company, and, when presented for payment, is charged against the various trust funds participating in the loan in accordance with their respective amounts, and a certificate indicating the facts is placed in each trust portfolio. Here we find the loan made, or agreed to be made, by the trustee; some one pays somebody for the loan of the money; it is to be apportioned among its trust accounts. Is there a contest between personal interest and its trustee duty? Is the gift of the trustee unbiased and uninfluenced?

The instant case contains special and distinct facts which must determine the liability of the executor-trustee. There is no evidence of bad faith. Was the executor-trustee improvident, or can it be held there was an error of judgment at the time of the placement of the participations?

The standard that is now established by the courts is that the purchase by executors of speculative stock constitutes negligence and authorizes a surcharge for any loss incurred. Can it be held that such a type of investment in the *amounts of the participations* as purchased by the executor-trustee, is such a speculative investment as to constitute improvidence?

The executor-trustee, by the terms of the will and the Banking Law, is left to its own choosing. It chose the " participation " investment. The assignment into the trust of such " participations " became the proximate cause of the loss. (*Matter of Adriance*, 145 Misc. 345; *Matter of McCafferty*, 147 id. 179, 183.)

These shares or parts of real estate mortgages commonly called " participations," in January, 1933, consisted of the following, as developed by the testimony of the vice-president of the accounting executor-trustee:

1. A $4,000 share in a $12,000 mortgage. Made October, 1921; extended to August, 1933. No default in interest or taxes.

2. A $6,900 part share in a mortgage of $640,000. Purchase made April, 1923; extended to April, 1933. Taxes are in arrears.

3. A $14,600 part or share in a $650,000 mortgage. Extended to July, 1933.

4. A $750 part or share in an entire mortgage of $30,000. Set apart, 1924; expired, 1928, and now past due. In process of foreclosure.

5. A $4,000 part or share in a whole mortgage of $175,000 on land at Mount Kisco. Purchased November, 1929; due May 1, 1934.

6. A $1,600 part or share in a total mortgage of $5,000 at Nyack. Past due mortgage since June, 1926.

7. A $2,000 part or share in a total mortgage of $18,000 at New Rochelle. Purchased February, 1930.

8. A $1,000 part or share in a total mortgage of $510,000. Due December 15, 1935.

9. A $1,000 part or share in a whole mortgage of $195,000. Due April 29, 1929; running as a past due mortgage and extended for three years.

*10. A $250 part in a whole mortgage of $58,000. Made, 1924; extended to November, 1933.

*11. A $5,000 part in a total mortgage of $90,000. Purchased, 1923.

The mortgage in which the $750 part share is invested is in the process of foreclosure.

The title to the personalty is still in the executors. It is an administrative title. (*Lane* v. *Albertson*, 78 App. Div. 607, 614.) The principle of law applied to commissions of executor-trustees is pertinent here.

In the instant case there was a direct gift to the respective beneficiaries with the time of possession alone postponed. (*Matter of*

---

* These two mortgages have been foreclosed and the trust now has an interest in the real property.

*Ziegler*, 218 N. Y. 544; *Matter of Jackson*, 138 Misc. 167, 172; *Matter of Underhill*, 35 App. Div. 434; affd., 158 N. Y. 721; *Matter of Quinlan*, 147 Misc. 483.)

*Matter of Schliemann* (259 N. Y. 497) states the legal principles to be applied here. It is held that, where two functions with their corresponding duties coexist and are interwoven so that no point of time is fixed in the testamentary intention at which one function should end and the other begin, the duty of the executor continues. Attached to the office of executor, as a continuing duty, are certain trust powers and functions, and, in such a case, is but one office. To be otherwise, testamentary intent must be apparent to create a trust fund to be held by a trustee after severance from the general assets of the estate. In the instant case and, under the controlling decisions, it is entirely clear that the executors continued to hold with certain trust powers annexed to their office.

The fact is that the amended decree upon the prior accounting of executors, dated April 19, 1922, states that the executor is discharged from liability as to all matters embraced in the said account, except " as to the property remaining in the hands of said executor as herein provided, which is to be administered and distributed as herein directed and which is the subject of a further accounting in this court."

The provisions of the will give the executor-trustee the right to make investments " *as it shall deem wise.*" The provisions of section 188 of the Banking Law, subdivision 7, are that *corporate fiduciaries may make investments* in parts or shares at its sole risk. The " participations " which now constitute the trust fund are non-legal investments. (*Matter of Maloney*, 120 Misc. 456.) The trustee points to section 188 of the Banking Law and the terms of the will for authority to purchase these " participations." In my opinion, it makes the accounting trustee subject to the principle of law declared in *King* v. *Talbot* (40 N. Y. 76, 85, 86, 88, 89) that a " trustee is bound to employ such diligence and such prudence in the care and management [of the trust], as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.

" This necessarily excludes all speculation, all investments for an uncertain and doubtful rise in the market, and, of course, everything that does not take into view the *nature and object* of the trust, and the consequences of a mistake in the selection of the investment to be made. * * * If it be said, that trustees are selected by the testator, or donor of the trust, from his own knowledge of their capacity, and without any expectation that they will do more than, in good faith, exercise the discretion and judgment they possess,

the answer is: *First*, the rule properly assumes the capacity of trustees to exercise the prudence and diligence of prudent men, in general; and, *second*, it imposes the duty to observe and know, or learn, what such prudence dictates in the matter in hand.

" And once more, the terms of the trust, and *its particular object and purpose*, are, in no case, to be lost sight of in its administration. * * *

" Palpably, then, the *first* and obvious duty was to place that fifteen thousand dollars in a state of security; *second*, to see to it that it was productive of interest; and, *third*, so to keep the fund, that it should always be subject to future recall for the benefit of the *cestui que trust*. * * *

" But, apart from the inference from the use of that word, I think it should be said, that whenever money is held upon a trust of this description, it is not according to its nature, nor within any just idea of prudence, to place the principal of the fund in a condition, in which, it is necessarily exposed to the hazard of loss or gain, according to the success or failure of the enterprise in which it is embarked, and in which, by the *very terms of the investment*, the principal is not to be returned at all. * * *

" If it be said, that men of the highest prudence do, in fact, invest their funds in such stocks, becoming subscribers and contributors thereto, in the very formation thereof, and before the business is developed, and in the exercise of their judgment, on the probability of its safety and productiveness, the answer is, so do just such men, looking to the hope of profitable returns, invest money in trade, and adventures of various kinds. In their private affairs, they do, and they lawfully may, put their principal funds at hazard; in the affairs of a trust they may not. The very nature of their relation to it forbids it. * * *

" It assumes and insists, that the trustees shall not place the fund where its safety and due return to their hands will depend upon the success of the business in which it is adventured, or the skill and honesty of other parties entrusted with its conduct; and it is in the selection of the securities for its safety and actual return, that there is scope for discretion and prudence, which, if exercised in good faith, constitute due performance of the duty of the trustees." (*King* v. *Talbot, supra; Meinhard* v. *Salmon*, 249 N. Y. 458, 464; *Matter of Cady*, 211 App. Div. 373.)

Such special investments must be scrutinized with great care. Where the trustee is acting under discretionary power, it owes an undivided duty to the estate and must act in the most scrupulous good faith. (*Pyle* v. *Pyle*, 137 App. Div. 568, 572; *Carrier* v.

*Carrier*, 226 N. Y. 114, 125; *Matter of U. S. Trust Co. & Earl [Richardson's Estate]*, 149 Misc. 192, Surrogate WINGATE; *Durant v. Crowley*, 197 App. Div. 540, 546; affd., 234 N. Y. 581.)

The first and obvious duty of the executor-trustee was to place the corpus of the fund in a *state of security*. (*Matter of Channing*, 129 Misc. 393; *Matter of Hurlbut*, 210 App. Div. 456, Second Department; *Costello v. Costello*, 209 N. Y. 252, 259.) The principles of law applying to the duty devolving upon an executor or trustee under the circumstances of making investments and their continuation in the trust are clearly stated by Mr. Justice DAVIS, Second Department, in *Matter of Cady (supra)*.

In equity the absence of a precedent is not fatal. (*Bergelt v. Roberts*, 144 Misc. 832, 837, 838.)

In my opinion an investment for which there is no market except the corporate fiduciary itself is improvident. The primary duty of the trustee to maintain the safety of the principal has not been sustained. The court deems the participation investments in the instant case unreasonable and improvident. The shares are worthless as marketable securities and unenforcible as legal obligations. *Matter of Blake* (146 Misc. 776, 780, opinions by Surrogate WINGATE) are the first cases on this type of investment. The allocation or purchase of such small units of investments by the trustee in very large mortgages is wasteful. (*Matter of Adriance*, 145 Misc. 345.) The court sustains the objection in respect thereto.

It will be recalled that the executor had money — actual cash — for investment. The terms of the trust are that the trustee is to pay over the income until Flint reaches the age of forty-five and " then to transfer and deliver to him the *principal* of the said share theretofore held in trust for him as aforesaid."

Let me again state that it is laid down in *King v. Talbot (supra)* that it is the duty of the trustee so to keep the fund that *it might always be subject to future recall for the benefit of the cestui que trust*. The trustee has so invested the fund that no money is available at this time. It uses the defense of world depression. The trustee wants to hand over the " participations," it says, in accordance with the terms of the will.

The financial panic of 1929 has brought actively into the foreground of legal and economic issues the question of the character of investments for trust funds. It is strongly urged here that the world-wide depression is the chief cause for the losses. I conclude, however, that the world depression was not the approximate cause of the loss. These shares or parts of mortgages never had value in normal times except as value was given to them by the trustee itself. There never was a market for such parts or shares except

as the trustee might purchase. The loss was made the hour the shares were set apart and the certificate deposited in each trust portfolio. When the executor-trustee declined to purchase, the market folded up. Market implies the existence of supply and demand, for, without the existence of either factor, no market is shown.

Buyers and sellers, by their respective sales and purchases, make a market price which the law takes as evidence of value. In the case before us we have a situation where the existence of fair market for these "participations" did not exist. As shown by the testimony of an officer of the executor-trustee, the only sale was had by transfer by the trustee itself from one trust portfolio to the trust portfolio of some other estate or trust of which the trustee was also the fiduciary. Asked why these particular participations should not be taken over by the executor-trustee and placed in one of its other trust accounts, the reply was that "We can find at the present moment more attractive investments."

If these participations cannot be sold, it brings up the question of how cash is to be obtained for the payment of commissions and legal services in the accounting proceeding.

In my opinion, this will speaks in "terms of money." Money must be turned over to the beneficiary, or his assignees. It has been decided in *Villard* v. *Villard* (219 N. Y. 482, 500) that a legacy or other payment pursuant to a direction in a will is ordinarily payable in cash, but it does not prevent any other form of payment which is *acceptable to the payee*.

"The decree sounds in money, and the trustees are charged with the specific fund for which they remain accountable." (*Matter of Richardson*, 149 Misc. 192, Surrogate WINGATE.)

The principle alluded to in *Villard* v. *Villard* (*supra*) is written into the Surrogate's Court Act, section 268, providing that a legatee or distributee may consent to accept as payment any *specified real or personal property*. The note of the revisers contained in the Report of the Surrogate Revision Commission [1914] p. 268, reads: "This section now enables a legatee or distributee to accept *good* securities in place of cash." (2 Jessup, 2441; see Surr. Ct. Act, § 217, to compel payment of distributive share.) It carries out the principle that, unless the will provides definitely for the gift of specific securities, a trustee must pay in money, except where the distributees consent to take in kind. The principle is also written into section 106 of the Real Property Law having to do with when trustees may lease trust property. (*Thirty-nine Cortlandt Street Corporation* v. *Lambert*, 209 App. Div. 575; 2 Jessup, 2441.) There is

no direction in this will for the executor-trustee to turn over securities, as was the case in *Matter of Kent* (173 App. Div. 563). (*Matter of Sturgis*, 135 Misc. 1.)

The present trust is similar to the holding for an infant to be paid over on majority. The executor-trustee was placed in a position of knowing when the trust period would end. The law with regard to infants is settled that the infant's property should not be invested beyond his majority, nor his money placed beyond his control at such time. The like principle applies to the instant case. In my opinion, the executor-trustee should so have conducted the investment of the trust that, upon the arrival of December 9, 1932, money would have been in hand to pay to the beneficiary. It would have been a turnover of the principal of the trust as required by the will. This was not observed and the executor-trustee declines to take over these securities and pay the cash.

The case of *Marczak* v. *Brooklyn City Railroad Co.* (262 N. Y. 21, mem., decided May 23, 1933) does not affect the instant case. The decision was on the facts presented in that particular case, as indicated by the order of reversal of the Appellate Division (237 App. Div. 841).

The account of the executor-trustee will be surcharged by the amount of the improvident investments, namely, $41,457.17. Said trustee is directed to pay to said William H. Flint, or his assignees, as found in the order of this court dated June 22, 1933, the sum of $42,376.61, with accrued interest, in money, less commissions and expenses of this accounting, and such executor-trustee will take over as its own property such participations.

Where a testamentary trust has been closed and nothing remains to be done but to make payment of the balance due as directed by a decree of the court, a legal duty or obligation is created and those entitled to the balance may maintain an action on an implied promise arising out of the obligation, or for money had and received. (*Dickerson* v. *Central Union Trust Co.*, 110 Misc. 640.)

Submit decree, upon notice to attorneys appearing.