In the Matter of the Estate of FRANCES A. JACOBS, Deceased.[*]

Surrogate's Court, Delaware County, June 28, 1934.

*Flaesch & Lathan*, for the contestants, Ruth Jacobs and another.

*Frank G. Gibbs*, special guardian for Clara H. Traver.

*Wingate & Cullen*, for the trustee, National City Bank of New York.

[*] See, also, 150 Misc. 381.

O'CONNOR, S. The court has rendered a decision construing the eighth clause of the last will and testament of Frances A. Jacobs deceased. At the time the petition was presented on August 11, 1933, for a construction of that clause of the will the trustee rendered its account, to which William H. Jacobs and Ruth Jacobs have filed objections. These objections are confined to the investments and reinvestments made by the present trustee of the funds received by it from the executor. Ten thousand five hundred dollars of the trust fund of William H. Jacobs was invested by the trustee in mortgage participation certificates, some of which were guaranteed by the Lawyers Mortgage Company and some by the National Title Guarantee Company.

The contestants object to the investments by the trustee in these certificates because several of them were not due until after the expiration of the term for which the trust was created, they were not readily convertible into cash, there is at the present time no market for them, they were not at the time they were purchased proper and prudent investments for the purpose of said trust, and some, or all, of said securities were purchased by the said trustee from itself.

Some of the objections are very easily disposed of. Section 21 of the Personal Property Law and section 111 of the Decedent Estate Law permit a trustee to invest in participation certificates, and there is no evidence that any of the participation certificates in which the trustee invested the funds of this estate were purchased from itself.

There has been some conflict in the decisions of the courts but the later decisions seem to hold that, even though a trust fund sustains a severe loss, the trustee's account is not to be surcharged on account thereof, if the investments were made in good faith in legal securities. (*Matter of Mulford,* 149 Misc. 728; *Matter of McKee,* 147 id. 889; *Matter of Pratt,* 143 id. 751; *Matter of Kemp,* 146 id. 155; *Matter of Lazar,* 139 id. 261.) *Matter of Flint* (148 Misc. 474), cited by the objectant, was reversed by the Appellate Division, Second Department (240 App. Div. 217).

The objection that several of these certificates were not due until after the expiration of the term for which the trust was created cannot be sustained because the Court of Appeals passed upon this question in *Marczak* v. *Brooklyn City Railway Co.* (262 N. Y. 473), when it affirmed the decision of the Appellate Division (as reported in 237 App. Div. 841), which reversed the decision of the Special Term (reported in 147 Misc. 399), and held that such an objection should not prevail.

The action of the trustee in this matter in investing the amount it did in these participation certificates and its failure to protect itself by the sale thereof before they had reached the low value they did, is subject to criticism. This type of investment did not have a ready market, as is shown by the testimony produced by the trustee itself, and when it was necessary to redeem or cash these certificates prior to their actual maturity, the owner had to rely, as a general rule, upon the market as made by the company issuing the participation certificates. The situation was not a salutary one and could only result as it did. The company issuing the certificates redeemed or purchased them prior to maturity as long as prosperity continued but when the depression came it would and could not pay or redeem and there was no market whatever for the certificates except at a great loss to the owner.

One of the fundamental principles of a safe and sound investment policy is diversity of investment. There is no reason why this trustee should not have invested a portion of these funds in a different type of security. While this trust fund is not a large one, there is no reason why the trustee should not have exercised the same care in investing it that it would in investing a much larger one. The same principles are applicable and the same care should be used. One of the reasons why banks and trust companies were permitted by law to become trustees of estates and of trust funds was because of their wide, long and varied experience and knowledge of investments and their opportunities to invest the moneys of their wards in safe and sound securities. According to the court records they have not been much, if any, more successful in their investments than the individual trustee.

Counsel for the trustee makes the suggestion that it was the duty of the trustee to keep the trust funds invested at the maximum amount of interest consistent with safety and in legal securities. While the trustee in this case, as in many others, has kept the trust fund invested at the maximum amount of interest, it has done so at a sacrifice of the safety of the fund. The security of the investment was of first importance and the rate of interest secondary.

I agree with the statement of the learned surrogate in *Matter of Mulford* (149 Misc. 728), that " A trustee who invests under statutory authority cannot be charged with a loss because of deficiency ' of prevision and prophecy ' as to subsequent happenings." But the court is not convinced that if this trustee had exercised the sound judgment which it is supposed to have by reason of its experience and used the many and varied sources of information at its command, the loss on the investments made would not have

been as great as it is. Persons who handle trust funds should not be carried away by a speculative wave and allow their desire for profit and apparent large return on the investment for a short time, to run away entirely with their sound judgment based upon experience of a long term of years during recurring periods of prosperity and depression. If they are to err at all it should be on the conservative side and they should never allow their investments to become speculative in any way. The trustee in this case could easily have avoided any criticism of its investment and been enabled to return the fund intrusted to its care nearly intact to its ward if it had invested in other legal securities such as government bonds or other high grade corporate bonds. As was said in *Matter of Flint* (148 Misc. 474), the sections of the statute permitting the investment of trust funds in participation certificates is merely permissive and because a statute permits the investment to be made does not absolve the trustee entirely from exercising sound judgment and due discretion in making the investments.

This court realizes it is much easier to criticize and pass judgment on investments after they have depreciated in value than it is to determine what the investment shall be at the time it is made, especially when it is made during a time of great prosperity followed by a severe depression. Therefore, it is going to give the trustee the benefit of the doubt and refuse to surcharge the account because of the investments made by it. The court arrives at this determination with a great deal of hesitancy because the beneficiary is greatly in need of the moneys which were intrusted to the trustee for investment by the testator with the expectation that they would be turned over to this beneficiary at the termination of the trust unimpaired.

The attorneys for the trustee have requested that a decree should be entered directing distribution of the trust corpus to William H. Jacobs in kind. Such a decree is not within the power of the surrogate to make. Mr. Jacobs is entitled to receive that portion of the trust fund left in cash and this court would not make such a decree, if it could. The decree may, however, provide that the said William H. Jacobs may at his election determine whether he desires to receive the trust fund in moneys or accept the distribution of the trust corpus in kind.

It appears that at the time the trust terminated, to wit, January 23, 1933, and for some time thereafter these participation certificates could have been sold for from seventy-five to eighty-four and one-half. At the time the account was filed on August 11, 1933, they could have been sold for about thirty and the market for them is about the same at the present time. There is no reason

why the trustee could not and should not have disposed of the certificates at about the time the trust matured. If it had done so it would have saved the trust estate from a depreciation of better than fifty per cent. A trustee is not required to secure the highest market price but it is supposed to use due diligence. The courts have gone a long way in protecting trustees in their investments, where, because of the depression, the securities have greatly depreciated in value prior to the maturity of the trust, or within a reasonable time thereafter. But where the trustee fails to convert the securities into cash and fails to render its account until six months after the termination of the trust, during which time the securities depreciate in value to the extent they have here, it would be a great injustice to compel the beneficiary to bear the loss occasioned thereby. This is particularly true in view of the situation that existed on January 23, 1933, at the termination of the trust. The trustee ought either to have disposed of the certificates and salvaged as much of the trust funds as it could for the beneficiary or else it should have rendered its account to the court within a reasonable time thereafter. Although it had the right to invest in securities which did not mature until after the termination of the trust, it must have known it had to account to the beneficiary at the termination of the trust in cash. Its failure to dispose of the securities or to render its account at or soon after the termination of the trust has resulted in a great loss to the beneficiary for which it should be held accountable.

The trustee contends that the objections addressed to the $3,000 mortgage forming the corpus of the $3,000 trust for Ruth Jacobs are premature in that that trust has not yet terminated, that there is no necessity for liquidating the mortgage at this time, and that whether or not there will be a loss at the time the trust is terminated is yet to be determined. The court will pass on that objection and upon that investment when the trust is terminated.

The objections of contestant are overruled except that the trustee must account to the beneficiary in cash for the market value of the participation certificates at the date of the termination of the trust unless the beneficiary elects to accept the trust corpus in kind.

A decree may be entered accordingly.